STATE of North Dakota, Plaintiff and Appellee,

v.

Hugh VALLELY, Defendant and Appellant.

STATE of North Dakota, Plaintiff and Appellee,

v.

Timothy VALLELY, Defendant and Appellant.

Cr. Nos. 910144 to 910147.

Supreme Court of North Dakota.

Jan. 9, 1992.

Peter H. Furuseth (argued), States Atty., Williston, for plaintiff and appellee.

Harms Law Offices, Ltd., Williston, for defendants and appellants; argued by Robert W. Harms. Appearances by Timothy Vallely and Hugh Vallely.

MESCHKE, Justice.

A jury convicted Hugh Vallely and Timothy Vallely of seven counts of illegally hunting antelope. They appeal, contesting the sufficiency of the circumstantial evidence to convict them. We affirm the convictions.

On Saturday, November 10, 1990, a farmer telephoned the office of the Williams County Sheriff and reported a wounded antelope and a dead antelope in Good Luck Township. The office radioed Deputy Randy Miller to investigate. Miller drove to the reported location, a rural area of gently rolling prairie with cultivated fields, and found several injured antelope. He radioed Game Warden Robert Timian for assistance. About 3:30 p.m., Timian joined Miller there to investigate.

Timian contacted Warden–Pilot Dominic Volesky who flew over the area and, by radio, helped them locate other injured antelope. Altogether they identified two dead antelope, recently shot, and four wounded ones that they killed to end suffering. Searching briefly for evidence before dark, Timian found a plastic holder for rifle cartridges, made by Federal, in the vicinity.

As dark came, Warden Timian gathered the antelope carcasses and later dressed them. He testified that each had been wounded by gunshot, but he was unable to identify what kind of gun had been used, except that a shotgun had not been used.

The next day, at 10:40 a.m., Warden Timian returned to the vicinity to seek evidence. From the spot where they had found a dead antelope, he followed the bloody trail that it had left, back into a stubbled field toward a road. While tracing this trail, Timian heard shots in the distance to the south. Moments later, he saw an antelope doe and two fawns run into view from that direction. While they ran, a dark-colored pickup, with "a tool box or something right behind the cab," came into sight atop a southerly rise about a half-mile away. Two persons got out of the pickup and fired rifles at the fleeing doe and fawns. As the animals ran across a tilled field, Timian saw dirt fly up and the doe fall amid a "great number" of shots.

Timian went back to his pickup, but he lost sight of the dark-colored pickup. He promptly drove to where this last antelope lay, dead. Timian radioed Deputy Miller, who was driving to the area to help investigate, to be on the lookout for the pickup. Then Timian drove west to a gravel road searching for the dark-colored pickup. He briefly stopped another vehicle to ask if they had seen the dark-colored pickup. Turning south, Timian soon met a dark-colored pickup driving toward him on the road.

Timian stopped the oncoming pickup and, when the occupants got out, talked to Tim and Hugh Vallely. Timian asked if they had shot an antelope. Tim replied "[n]o," but also added that they had been shooting at deer. Timian approached the pickup, looked in, and saw two .243–caliber rifles, two shotguns, and assorted shells. Since only five or ten minutes had elapsed from the shooting that he had seen, Timian decided to check the rifles. "I thought that ... any rifle that would shoot that many rounds that fast would still be warm," Timian testified. Timian reached into the pickup, touched both rifles, and found them warm at the chambers. This dark-colored pickup had a toolbox behind the cab.

To check out his suspicions, Timian asked Vallelys to return with him to the spot where the last antelope lay. On the way back, he spotted spent-shell casings on the ground next to the trail, near the spot that he had seen the dark-colored pickup stop to shoot at the seventh antelope. Timian stopped there, Deputy Miller joined him, and together they discovered nearby tire tracks that matched the tires of the Vallelys' pickup, and discovered footprints that matched the shoes worn by Tim and Hugh. The officers found 17 spent-shell casings of .243–caliber on the ground, and an identical spent casing in the passenger side of the pickup. Searching in the direction of the first shots heard by Timian, the officers found two more spent .243–caliber casings.

While the Vallelys silently waited, Timian and Miller each photographed the spent-shell casings, the tire tracks, and the footprints, as well as the Vallelys' pickup, its tires, and the bottom of each shoe worn by Tim and Hugh. They seized the .243–caliber rifles and ammunition from the Vallelys' pickup. The officers also seized two plastic, Federal cartridge-holders, like the one Timian had found the day before in the vicinity of the six injured and dead antelope.

Later that Sunday, searching in the vicinity of the antelope slaughter on the day before, Miller and Timian discovered seven more .243–caliber casings and a shotgun shell in groups of one, two, and five at different spots. The officers also found some footprints; those in the summerfallow were not identifiable but, according to Timian, one print in the stubbled field had a discernible pattern like Hugh Vallely's shoe.

Hugh and Tim Vallely were each criminally charged with seven counts of hunting protected big game animals.[1] At the jury trial, Warden Timian, Warden Volesky, and Deputy Miller testified about their investigations. A map locating shoot-sites and the places where antelope were found (hand-drawn by Timian), a similar printed map of four sections in Good Luck Township, an aerial photo of the same area, the plastic cartridge holder found on November 10, and all of the spent casings found, as well as the rifles, cartridges, cartridge boxes, and cartridge holders seized from the Vallelys' pickup were made exhibits. Pictures and slides of the dead antelope, casings on the ground where found, the pickup and its tires, the pickup tracks, the footprints, and Hugh's and Tim's shoes were admitted and shown to the jury. Aaron Rasch, Director of the Forensic Science Division of the Department of Health and Consolidated Laboratories, testified about test firing the two rifles and comparing the test casings with the found spent casings. Rasch confirmed that all the found spent casings came from the Vallelys' rifles.

Additionally, Melody Edenhoff, and her husband, Darrel Edenhoff, each testified that, while hunting deer near Good Luck Township in the forenoon of November 10, they met the Vallelys. Edenhoffs talked and hunted with the Vallelys for an hour or so, then. Edenhoffs testified that the Vallelys were driving a dark-colored pickup and carrying .243–caliber rifles that day, too.

The jury found both Vallelys guilty of all seven counts. The trial judge sentenced each to pay $4,500 in fines and $700 in fees, and to serve a year and thirty days in jail, but half of the fines and all confinement were suspended for two years probation. Probation conditions include loss of hunting and fishing privileges for two years, forfeiture of their rifles and cartridges, and 100 hours of community service each. The Vallelys appeal, contesting the sufficiency of the circumstantial evidence to convict them of the crimes.

■ Circumstantial evidence is often the only way to prove a crime. *State v. Lovejoy,* 464 N.W.2d 386 (N.D.1990). A

---

1. NDCC 20.1–05–02 says:

   *Big game animals protected.* No person may hunt, harass, chase, pursue, take, attempt to take, possess, transport, ship, convey by common or private carrier, sell, barter, or exchange any big game animal except as provided in this title.

   The definition of "big game" includes antelope. NDCC 20.1–01–02(4). The offense is a class A misdemeanor. NDCC 20.1–05–01.

conviction from circumstantial evidence carries the same presumption of correctness as other verdicts, and will not be upset on appeal unless it is unwarranted. *State v. Lawenstein,* 346 N.W.2d 292 (N.D. 1984). In the trial court, circumstantial evidence is weighed with the presumption of innocence, and must exclude any reasonable inference of innocence. *State v. Manhattan,* 453 N.W.2d 758 (N.D.1990). The standard of review of that evidence here, however, is different. *Id.* Upon appeal, we determine only whether there is substantial evidence that reasonably tends to prove guilt and fairly warrants the conviction. *State v. Raulston,* 475 N.W.2d 127 (N.D.1991); *State v. Olson,* 290 N.W.2d 664 (N.D.1980); *State v. Larson,* 274 N.W.2d 884 (N.D.1979). Just as our summary of this evidence indicates, we view the evidence in the light most favorable to the verdicts of guilty.

■ Vallelys point out that no bullets, slugs, or other material were recovered from any of the antelope carcasses to identify the weapons that were used. Vallelys urge that there is no direct evidence as to how the antelope were injured or killed, when, and by whom. They thus argue that there is no proof that their rifles were fired at the antelope. We are not persuaded. That Vallelys shot the antelope can be reasonably inferred from the substantial circumstantial evidence that is present here.

Both Warden Timian and District Game Warden Supervisor, Floyd Chrest, testified about trying to find bullets in the carcasses. Chrest went over each carcass with a metal detector and was unable to locate any bullets. Both testified that the wound cavities appeared to be from high caliber slugs, like the Vallelys', that either went through the animal or disintegrated into fragments upon hitting bone. The jury heard this evidence about the lack of bullets to trace, and still believed that the circumstances substantiated that the Vallelys shot the antelope. Identifying spent casings to the Vallelys' rifles at both sites, tire tracks to the Vallelys' pickup at the Sunday site, and footprints to the Vallelys' shoes at both sites connected the Vallelys to the shootings. Absent other clues implicating other culprits, these telltale facts justify the Vallelys' convictions.

The Sunday shooting of one antelope was witnessed from a distance by a game warden, who identified two people with rifles in a dark-colored pickup. Soon after that, the Vallelys were stopped nearby in a dark-colored pickup with a toolbox behind the cab, their rifles matched the spent casings on the ground at that shoot-site, and their pickup tires and shoesoles matched tracks and footprints there. We conclude that this evidence proved that the Vallelys shot that antelope.

Witnesses placed the Vallelys hunting in the neighborhood of the shooting of six antelope on Saturday. Again, their rifles matched spent casings found on the ground in the vicinity of the shooting. While not as plainly identifiable, Warden Timian testified that he connected one footprint there with one of the Vallelys. Additionally, the similarity of the Saturday shootings with the comparable shootings on Sunday permits an inference adverse to the Vallelys. We conclude that this evidence also reasonably proved that Vallelys shot the six antelope on Saturday.

This circumstantial evidence permitted reasonable inferences of guilt and fairly warranted these convictions. Therefore, we affirm.

ERICKSTAD, C.J., LEVINE and VANDE WALLE, JJ., and VERNON R. PEDERSON, Surrogate Justice, concur.

VERNON R. PEDERSON, Surrogate Justice, sitting with the Court due to the resignation of the Honorable H.F. GIERKE.