**STATE of North Dakota, Plaintiff and Appellee,**

v.

**Stella FRANCK, aka John Doe 632, Defendant and Appellant.**

**Cr. No. 920159.**

Supreme Court of North Dakota.

April 27, 1993.

Constance L. Cleveland (argued), Asst. State's Atty., Fargo, for plaintiff and appellee.

Peter B. Crary, argued on behalf of counsel of record, Richard D. Varriano, Moorhead, for defendant and appellant.

MESCHKE, Justice.

We review the sufficiency of the evidence for a criminal conviction of disobeying a preliminary injunction that restrained obstruction of an abortion clinic. We affirm.

Stella Franck was one of 41 people arrested on November 21, 1991, in Fargo at the abortion clinic. Like the others, she was charged with violating NDCC 12.1–10–05 by disobeying a judicial order that restrained obstruction of the clinic. The injunction forbade going within 100 feet of the clinic, "except that two people may quietly and peacefully picket such facility, so long as said people do not interfere with operations ... or individuals seeking to enter or leave" it. Franck was convicted by a jury.

Franck timely moved for a new trial, arguing that the evidence was insufficient and that the verdict was against the weight of the evidence. The trial court denied a new trial, and Franck appealed. Because the notice of appeal was not timely filed, we remanded to the trial court to determine whether there was excusable neglect for the late filing. *State v. Franck*, 495 N.W.2d 60 (N.D.1993). The trial court ruled that there was excusable neglect and returned the record to this court to consider the merits of Franck's appeal.

This conviction stems from the decree that we affirmed in part, reversed in part, and remanded for further proceedings in *Fargo Women's Health Organization v. Lambs of Christ*, 488 N.W.2d 401 (N.D. 1992). That preliminary injunction was entered to prevent further repetition of conduct "where the protestors invaded the clinic, approached patients [and] clinic employees in a physically threatening manner, actually struck or restrained patients [and] employees, blockaded the clinic, and conducted demonstrations so noisy that clinic business was disrupted ... activities [that] continued despite the arrests on several occasions of many protestors." 488 N.W.2d at 406.

Franck argues that our holding in *Lambs of Christ*, striking those portions of the injunction that completely prohibited "speaking" and distributing literature as contrary to the First Amendment, necessitates a reversal of her conviction. The validity of the decree was not challenged at Franck's trial. Ordinarily, we do not review questions not raised below. *Gange v. Clerk of Burleigh County Dist. Court*, 429 N.W.2d 429, 432 (N.D.1988). We see no reason to do so in this case.

An injunction issued by a court with jurisdiction must be obeyed while it remains in force, however irregular or erroneous it is. *Gunsch v. Gunsch*, 69 N.W.2d 739 (N.D.1954) and cases cited there. Our

modification of the decree in *Lambs of Christ* does not require a reversal of Franck's conviction.

Franck went to the abortion clinic at 7:00 a.m. on November 21, 1991 to demonstrate. At first, she was one of three persons taking turns protesting within the zone around the clinic where the decree allowed "two people [to] quietly and peacefully picket" at a time. When several Fargo police officers arrived at the clinic at 8:00 a.m. to maintain order, Franck was one of two demonstrators in the authorized zone.

Around 8:30 a.m., three groups of demonstrators converged on the clinic. As the situation escalated, more police officers were called to the scene. Fourteen police officers and seven squad cars came. Media representatives also arrived.

The officers encountered three waves of protesters. First, three persons pulled up in a car that blocked the driveway of the clinic. They locked the car's doors, obscured the interior of the car with protest signs in the windows, then locked themselves to the headrests with bicycle locks. Second, 13 persons surrounded the car; some dove under it to hamper its removal. Third, a group of 27 persons formed a circle around the car. They marched, prayed, and chanted in the driveway of the clinic. Franck joined this third group, circling in the driveway.

At first, the police used a bullhorn to ask the group to disperse, to advise them of the injunction, and to inform them that they would be arrested if they did not leave. Franck was individually advised by an officer that she was violating the injunction, and she was asked to leave. Franck remained in the driveway, continuing to hinder anyone who might enter or leave the clinic.

The police arrested, physically removed, and charged 41 persons, including Franck, with violating NDCC 12.1–10–05, a class A misdemeanor, by disobeying a judicial order. Franck was convicted by a jury of six.

■ The pertinent part of the criminal statute that Franck was charged with violating says:

A person is guilty of a class A misdemeanor if he disobeys or resists a lawful temporary restraining order or preliminary or final injunction or other final order, other than for the payment of money, of a court of this state.

NDCC 12.1–10–05(1). Franck argues that the prosecution failed to prove that she had been given actual notice of the terms of the injunction, that she obstructed the clinic, and that she willfully violated the injunction.

In reviewing the sufficiency of the evidence for conviction of a crime, we view the evidence in the light most favorable to the verdict. *State v. Manhattan*, 453 N.W.2d 758 (N.D.1990). We give the prosecution the benefit of all inferences that can reasonably be made from the evidence. *Id.* We determine only whether there is substantial evidence that reasonably tends to prove guilt and fairly warrants the conviction. *State v. Vallely*, 479 N.W.2d 480 (N.D.1992). We conclude that the evidence here was sufficient to reasonably infer Franck's guilt and to warrant her conviction.

■ Franck argues that she was not given "actual notice in accordance with the terms of the injunction." She focuses on the clause in the preliminary injunction about notice of its existence:

The Order entered here shall apply to any and all individuals who receive notice of the Order. Service of this notice can be made by personally handing or reading a copy to a person who is in violation or who is intending to violate the terms of the Order.

Franck argues that the notice was insufficient because she "was not a named defendant," and "was neither given a copy of the injunction, nor was any portion ... read to her." She concedes that "[a]n announcement pertaining to the injunction was made over a bullhorn," but argues that it did not strictly comply with the terms of the order because "the particulars of what was said were not offered into evidence by the State and remain unknown."

Still, several officers testified that they heard the bullhorn announcement of the

particulars of the injunction. An officer personally asked Franck to leave and warned her that, if she did not, she would be arrested for violating the injunction.

Franck also evidenced knowledge of the injunction by her initial lawful demonstration, by her response to the officer who warned her personally, and by her testimony at the trial. Franck testified that she was "aware of an injunction," that she had discussed it with other persons, and that she was familiar with some specifics of the injunction. This evidence allowed the jury to find that Franck had received adequate notice of the injunction.

■ Franck argues that there was insufficient proof that she obstructed the business of the clinic. She points to testimony by one officer that "there was still room to drive into the abortion clinic" and that "no one at the abortion clinic complained that they could not get out." Also, Franck notes that another officer testified that "no one was arrested for obstructing the work of the clinic, rather they were arrested for going within 100 feet of the abortion clinic." *See City of Grand Forks v. Cameron*, 435 N.W.2d 700, 703 (N.D.1989) (Defendant's "actions in refusing to leave upon being instructed to do so, stepping in front of the officer, and attempting to enter the house after being instructed to leave, physically obstructed the officer in the performance of his duties."). In this case, there was ample testimony for the jury to find that Franck was part of a large group that demonstrated other than "quietly and peacefully" in the driveway of the clinic in violation of the injunction.

■ Finally, Franck argues that the prosecution failed to prove that her conduct was willful. *See* NDCC 12.1–02–02(2): "If a statute ... defining a crime does not specify any culpability and does not provide explicitly that a person may be guilty without culpability, the culpability that is required is willfully."

Franck says, "[s]he arrived alone. She prayed alone." Claiming that she had not left her initial lawful position as one of two within 100 feet of the clinic, Franck argues that she continued to be privileged by the terms of the injunction to "quietly and peacefully picket" the clinic, without regard to what others may have done.

Franck also testified that she was blocked in by police cars, that there was a lot of confusion with police shouting, people yelling, and reporters milling around, but that she "just kept on praying." One witness testified, "[t]he group just kind of converged on her and she didn't have a place to go." Upon being requested to leave, Franck replied that she was one of the two people who were lawfully permitted within the 100–foot zone. From this evidence, Franck argues that her actions and her independence from the other protestors "clearly evidence a state of mind contrary to the State's claim of a willful violation of the injunction."

The jury heard this evidence and these arguments, too, yet found Franck guilty of a willful violation of the injunction. A state of mind is rarely proven directly, and usually must be inferred from conduct and circumstances. Evidentiary conflicts and factual questions about Franck's state of mind were proper for the jury to decide; they are not appropriate for judicial second-guessing.

We conclude that there was sufficient evidence for the jury to find Franck guilty of disobeying a lawful preliminary injunction.

LEVINE, SANDSTROM and NEUMANN, JJ., concur.

VANDE WALLE, Chief Justice, concurring specially.

Franck's initial conduct was not illegal and was within the parameters of the injunction, *i.e.*, "two people" at a time may "quietly and peacefully picket." Her conduct became illegal as a result of the actions of other people. At first blush this appears to be unfair, but a person cannot evade responsibility by permitting the act enjoined to be done by others in her presence and with her acquiescence. *See* 43A C.J.S. *Injunctions* § 296(b) (1978).

Franck had the right to be where she was, doing what she was, prior to the time

the other demonstrators arrived. Once they arrived, blocked the driveway, carried on the other disruptive activities prohibited by the injunction, and the police officer ordered everyone, including Franck, to disperse, that was no longer true. *Cf. State v. Elliston*, 159 N.W.2d 503 (Iowa 1968) [Evidence sustained unlawful assembly conviction of defendant who was among people engaged in loud disturbance and who refused to move on when told to do so by police officer]. Under the circumstances, the police were not required to attempt to separate the two or three people who had been peacefully at the location from those who were obviously there to create a disturbance. The officers were entitled to direct everyone, including Franck, to leave so that calm and order could be restored. When Franck refused that order of the police officer, she indicated her participation in the enjoined activities.

If Franck has a complaint it is not with this proceeding. Her complaint is against the demonstrators who, by their actions, converted her peaceful, legal activity into an illegal, enjoined activity.

I concur in the result reached by the majority opinion.