Jack A. MacDONALD, Sr., Appellant,

v.

STATE of Alaska, Appellee.

No. A–7231.

Court of Appeals of Alaska.

March 3, 2000.

Benjamin I. Whipple, Palmer, for Appellant.

Nancy R. Simel, Assistant Attorney General, Office of Special Prosecutions and Ap-

have probative value in another case, the judge presiding there should decide whether or not to lift the orders.

peals, Anchorage, and Bruce M. Botelho, Attorney General, Juneau, for Appellee.

Before COATS, Chief Judge,
MANNHEIMER and STEWART, Judges.

### O P I N I O N

COATS, Chief Judge.

This appeal involves the question of whether an individual can be prosecuted for the crime of "violating a domestic violence protective order," AS 11.56.740(a), when he has actual knowledge of the protective order, but has not been formally served with a written copy of the order. MacDonald was charged with five counts of violating a domestic violence protective order. He filed a motion in district court to dismiss the charges against him, claiming that the court lacked jurisdiction over him because he had not been formally served with a written copy of the order in accordance with Rule 4 of the Alaska Rules of Civil Procedure. After finding that MacDonald had actual knowledge of the domestic violence protective order at the time the violations occurred, the district court denied MacDonald's motion to dismiss. MacDonald subsequently pled no contest to, and was found guilty of, one count of violating a domestic violence protective order in each of two separate, but related cases.[1] We affirm.

In a written order denying MacDonald's motion to dismiss, District Court Judge Suzanne H. Lombardi found that an ex parte domestic violence protective order was issued against MacDonald on June 29, 1998. The order stated he was not to contact Ruth Kern and that he was to stay away from her residence. After the attempts to serve a written copy of the order on MacDonald failed, the police called MacDonald and informed him of the order. In addition, both Kern and her friend advised MacDonald that there was an order not to contact Kern. MacDonald acknowledged to different persons that he knew the protective order had been issued against him and that he was avoiding service. After he had been notified of the order, MacDonald contacted Kern at her residence and at various other places.

MacDonald does not challenge Judge Lombardi's factual findings, nor does he argue that he lacked actual knowledge of the domestic violence protective order at issue.[2] Instead, he contends that he was not bound by the protective order because, at the time the violations occurred, he had not been personally served with a written copy of the order pursuant to Alaska Civil Rule 4.[3] MacDonald also argues that his conviction violates his due process rights and that AS 18.66.160(a) and (b), which governs service of domestic violence protective orders, is unconstitutionally vague. We disagree.

MacDonald's arguments regarding the applicability of Civil Rule 4 ignore the fact that he was subject to an ex parte domestic violence protective order.[4] Alaska Civil Rule 65(d) specifically governs the scope of injunctions and restraining orders. It is a familiar rule of statutory construction that a specific provision governs, even though a general provision also applies.[5] Therefore, Civil Rule 65(d), rather than Civil Rule 4, determines when MacDonald was bound by the domestic violence protective order. Courts have consistently held that in criminal contempt proceedings, formal or personal service of an injunction or restraining order is not required for the defendant to be bound by the order. Instead, actual notice of the

---

1. In his plea agreement with the state, MacDonald preserved for appeal, pursuant to *Cooksey v. State*, 524 P.2d 1251 (Alaska 1974), the issues related to whether he was subject to the protective order.

2. In his reply brief, MacDonald argues that the district court did not rely on "competent evidence" in finding that MacDonald had knowledge of the existence of the order, and its contents, and that he tried to evade service of the order. We decline to address this argument because MacDonald raised it on appeal for the first time in his reply brief. *See Wilson v. State*, 967 P.2d 98, 100 (Alaska App.1998).

3. MacDonald was served with a written copy of the order on July 14, 1998—the same day as his initial appearance.

4. The protective order was issued against MacDonald pursuant to AS 18.66.110(a).

5. *See Sprague v. State*, 590 P.2d 410, 415 n. 14 (Alaska 1979); 2B NORMAN J. SINGER, SUTHERLAND STATUTORY CONSTRUCTION § 51.05 at 174 (5th ed.1992).

order is all that is required.[6] Civil Rule 65(d) provides that:

> Every order granting an injunction and every restraining order . . . is binding only upon parties to the action, their officers, agents, servants, employees, and attorneys, and upon those persons in active concert or participation with them **who receive actual notice of the order by personal service or otherwise** (emphasis added).

MacDonald argues that the actual notice provisions of Civil Rule 65(d) pertain only to those in "active concert" with a party to a restraining order. According to MacDonald, a party to a restraining order must be personally served with the order before he or she is bound by it. MacDonald's argument lacks merit. The actual notice requirements of the rule clearly apply to parties, as well as those in "active concert" with them.[7] We therefore conclude that MacDonald was subject to prosecution for violating a domestic violence protective order, pursuant to AS 11.56.740(a), because it is uncontested that he had actual knowledge of the protective order issued against him.

■ MacDonald next argues that his conviction violates his constitutional right to due process. MacDonald claims that at the time of his arrest, the court lacked personal jurisdiction over him because he had not yet been served with a written copy of the protective order. MacDonald relies on cases which hold that due process requires that a written copy of a complaint must be served on a defendant in a civil action before a default

judgment can be entered against the defendant.[8] But, MacDonald was not a defendant in a civil action—he was subject to an ex parte domestic violence order issued under AS 18.66.110(a). This statutory provision is part of the legislation known as the Domestic Violence Prevention and Victim Protection Act of 1996.[9]

The purpose of this Act is self-evident—to protect victims of domestic violence. Consistent with this underlying purpose, AS 18.66.110(a) provides that, under certain circumstances, an ex parte order may be issued by the court, *without notice* against a person accused of committing domestic violence.[10] Before such an order can be issued, the court must find that there is probable cause that a crime involving domestic violence has occurred and that such an order is necessary to protect the petitioner from domestic violence.[11] The petitioner must also certify in writing what efforts have been made, if any, to provide notice to the person against whom the order has been issued.[12] Further, the ex parte order expires 20 days after it is issued unless it is dissolved earlier by the court "at the request of either the petitioner or the respondent and after notice and, if requested, a hearing." [13] The superior and district courts both have jurisdiction over cases involving domestic violence protective orders issued pursuant to AS 18.66.100–18.66.180.[14]

The issuance of ex parte orders is not an unusual procedure. Courts issue ex parte orders in a variety of situations in addition to those involving domestic violence. Civil Rule 65(b) sets forth the circumstances under which a person can obtain an ex parte tempo-

---

**6.** *See e.g. State v. Linsky*, 117 N.H. 866, 379 A.2d 813, 818 (1977) (parties who have actual notice or knowledge of an injunction are bound by the injunction and can be punished for contempt even though they have not been served or the service was defective); and *State v. Franck*, 499 N.W.2d 108, 110–11 (N.D.1993) (abortion protester's criminal conviction for violating injunction upheld even though the protester was not provided with a copy of the injunction, nor was any portion read to her, where evidence established the protester had actual knowledge of the injunction and that she was violating its provisions).

**7.** *See* 11A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 2956 at 335–38 (2d ed.1995).

**8.** *See e.g. State, Dept. of Corrections v. Kila, Inc.*, 884 P.2d 661 (Alaska 1994); *Beam v. Adams*, 749 P.2d 366 (Alaska 1988).

**9.** Ch. 64, §§ 1–84, SLA 1996.

**10.** AS 18.66.110(a).

**11.** *Id.*

**12.** *Id.*

**13.** *Id.*

**14.** AS 22.10.020(a) and AS 22.15.030(10).

rary restraining order without notice to the adverse party. The issuance of such an order is an emergency procedure and is only appropriate when the applicant is in need of immediate relief.[15] To insure that the rights of all persons involved are protected, Civil Rule 65(b) prescribes various safeguards prior to the issuance of temporary restraining orders. For example, it must be shown that "immediate and irreparable injury, loss, or damage will result to the applicant before the adverse party ... can be heard in opposition[.]"[16] The rule also requires the applicant's attorney to certify in writing the efforts, if any, that have been made to give notice to the adverse party and the reasons supporting the claim that notice is not required.[17] As discussed above, AS 18.66.110(a) includes requirements similar to those set forth in Civil Rule 65(b). These requirements help insure that the constitutional rights of a person subject to an ex parte domestic violence protective order are protected.[18]

Furthermore, Civil Rule 65(d) requires a person to have actual notice of the injunction or restraining order before he or she is bound by it. As Wright, Miller, and Kane note:

> Another prerequisite for binding a person to an injunction is that the person must have notice of the order. The Supreme Court has made it clear that reasonable notice and an opportunity to defend are part of the due process limitations on the jurisdiction of a court. Thus, a question occasionally arises as to what constitutes knowledge of a judicial decree sufficient to sustain a contempt sanction. The text of Rule 65(d) states that those "who receive actual notice of the order by personal service or otherwise" may be bound. This makes it clear that the amenities of original process need not be followed.[19]

It is undisputed that MacDonald had actual notice of the domestic violence protective order issued against him. Such notice clearly satisfied the requirements of Civil Rule 65(d). Accordingly, we find that MacDonald's constitutional right to due process were not violated.

▬ MacDonald also argues that his conviction should be overturned because AS 18.66.160(a) and (b), which allow a peace officer to use "every reasonable means" and the petitioner to use "other available means" to serve a domestic violence protective order is unconstitutionally vague. MacDonald focuses on the legislative history of the Domestic Violence Prevention and Victim Protection Act of 1996, which states that the enactment of AS 18.66.160 has the effect of amending Civil Rule 4.[20] MacDonald argues that because the precise nature of the amendment is not specified in AS 18.66.160, the statute is unconstitutionally vague. We disagree.

The legislature's statement regarding the impact of AS 18.66.160 on Civil Rule 4 is moot since Civil Rule 65(d), rather than Civil Rule 4, determines when a person is bound by a domestic violence protective order. Further, in *Turney v. State*,[21] the Alaska Supreme Court held that three factors are to be considered in deciding whether a statute is unconstitutionally vague:

> (1) whether it is "so imprecisely drawn and overbroad that it 'chills' the exercise of [F]irst [A]mendment rights," (2) whether it gives adequate notice of the conduct prohibited, and (3) whether imprecise language encourages arbitrary enforcement by allowing prosecuting authorities undue discretion to determine the scope of the statute's prohibitions.[22]

The statute challenged by MacDonald, AS 18.66.160(a) and (b), describes how domestic violence protective orders are served. As such, this statute does not impact First Amendment rights, it does not prohibit any

---

15. *See* WRIGHT, *supra* note 7, § 2951 at 256–57.

16. Civil Rule 65(b).

17. *Id.*

18. *See* WRIGHT, *supra* note 7, § 2951 at 257, 262–64.

19. *See id.* § 2956 at 337–38 (citations omitted).

20. Ch. 64, § 77, SLA 1996.

21. 936 P.2d 533, 542 (Alaska 1997).

22. *Id.*

type of conduct, nor does it give rise to a civil or criminal enforcement action. Moreover, the "reasonable means" and "other available means" language that MacDonald attacks is not vague. Rather, it is consistent with the "actual notice" language in Civil Rule 65(d) discussed above. We therefore conclude that AS 18.66.160(a) and (b) is not unconstitutionally vague.

Finally, we note that MacDonald's arguments are contrary to the purpose of the Domestic Violence Prevention and Victim Protection Act of 1996, which is to protect victims of domestic violence. MacDonald's proposed interpretation of the Act would allow a person who knows that an ex parte domestic violence protective order has been issued against him or her, but has not yet been served, to violate the order and, at the same time, avoid prosecution. Such an interpretation would also encourage someone who is subject to an ex parte domestic violence protective order to evade service of process. We agree with the Magistrate's statement that "from a standpoint of the entire purpose of an ex parte restraining order to let it hinge on whether or not someone has been actually served with the paper once one has knowledge of the existence of the order seems to defeat its entire purpose."

The judgment of the district court is AFFIRMED.