Frank J. OLSON, Appellant,

v.

STATE of Alaska, Appellees.

No. A–8379.

Court of Appeals of Alaska.

Sept. 12, 2003.

Leslie Hiebert, Assistant Public Advocate, and Brant McGee, Public Advocate, Anchorage, for Appellant.

Erin E. White, Assistant District Attorney, Susan Parkes, District Attorney, Anchorage,

and Bruce M. Botelho, Attorney General, Juneau, for Appellee.

Before: COATS, Chief Judge, and MANNHEIMER and STEWART, Judges.

## OPINION

STEWART, Judge.

Frank J. Olson was convicted of violating a long-term domestic violence protective order by approaching the residence of Cay Jackson. Olson knew at the time he approached Jackson's apartment building that the court had ordered him not to do so. But he had never received notice of the hearing on the petition for the protective order, and thus never had an opportunity to contest the allegations of domestic violence or the terms of the order. Olson filed an application for post-conviction relief, claiming that this lack of notice was a valid defense to the charge of violating the protective order, and that his attorney provided ineffective assistance of counsel by failing to file a motion to dismiss the case on this ground. Because we conclude that Olson's claims have merit, we grant his application for post-conviction relief and reverse his conviction.

*Facts and proceedings*

On September 2, 1997, Master Andrew Brown held a hearing on Larry Jackson's petition to the court for a long-term domestic violence protective order against Olson. Jackson had previously been Olson's third-party custodian; he was also the father of Olson's former girlfriend, Melodie Jackson. Larry Jackson alleged, among other things, that Olson had threatened to kill him. Following that hearing, Master Brown issued a protective order prohibiting Olson for six months from contacting Larry Jackson or approaching his home, vehicle, or work place.

The order also barred Olson from approaching the apartment building of Larry Jackson's other daughter, Cay Jackson.[1]

On April 3, 1998, a jury convicted Olson of violating the long-term domestic violence protective order[2] by approaching Cay Jackson's residence. Two years after this conviction, Olson brought an application for post-conviction relief, claiming, among other things, that his conviction was void because Master Brown had issued the long-term protective order without giving him notice and an opportunity to be heard. Olson claimed that his trial attorney was ineffective because he never challenged his conviction on this ground, even though Olson told his attorney before trial that he had received no notice of the September 2, 1997, hearing.

District Court Judge Gregory J. Motyka denied Olson's application for post-conviction relief, and Olson appealed to this court.[3] We upheld Judge Motyka's decision on all but one of Olson's claims: because the record was unclear as to whether Olson had received notice of the September 2, 1997, hearing on Jackson's petition for a long-term protective order, we directed the district court to reconsider Olson's assertion that it lacked personal jurisdiction over him when it issued the order.[4] Generally, a judgment is void if the court that issued the judgment lacked personal jurisdiction over the defendant or otherwise acted in a manner inconsistent with due process of law.[5]

Following an evidentiary hearing, Judge Motyka found that Olson had never received notice of the hearing on Jackson's petition for a long-term protective order. Judge Motyka then addressed the question this court had posed when it remanded the case: If Olson never received notice of the hearing, did he have a valid defense to the charge of violating the long-term protective order, even

---

1. Olson was apparently ordered to stay away from Cay Jackson's residence based on Larry Jackson's testimony that Olson had made threats at that location.

2. AS 11.56.740(a).

3. *Olson v. State,* Alaska App. Memorandum Opinion and Judgment No. 4442, 2001 WL 1007464 (September 5, 2001).

4. *Id.* at 8, 2001 WL 1007464 at *4.

5. *See Aguchak v. Montgomery Ward Co., Inc.,* 520 P.2d 1352, 1354 (Alaska 1974); *Holt v. Powell,* 420 P.2d 468, 471 (Alaska 1966).

though he knew the terms of the order before he violated it? [6]  And, if so, did he receive ineffective assistance of counsel because his attorney did not file a motion to dismiss the case on this ground? [7]

Judge Motyka concluded that Olson did not have a valid claim and reaffirmed his dismissal of Olson's application for post-conviction relief.  He held that notice and an opportunity to be heard were not constitutionally required in Olson's case because Olson had no interest in harassing Jackson, and the State had a strong countervailing interest in preventing domestic violence.  He also ruled, based on our decisions in *Jacko v. State*[8] and *MacDonald v. State*,[9] that once Olson had received notice that the protective order had been issued, he was obliged to comply with the order until it was vacated by the court.

Following Judge Motyka's ruling, the parties submitted supplemental briefs.

### Discussion

*Was the long-term protective order issued against Olson void?*

■ The statute governing long-term domestic violence protective orders,[10] AS 18.66.100, requires a court receiving a petition for a protective order to "schedule a hearing and provide at least 10 days' notice to the respondent of the hearing and of the respondent's right to appear and be heard, either in person or by an attorney." [11]  Following that hearing—whether or not the respondent appears—the court may issue a long-term protective order if it finds by a preponderance of the evidence that the respondent committed domestic violence against the petitioner.[12]  The legislature has thus specified in the statute authorizing long-term domestic violence protective orders what type of notice is required for a court to assert personal jurisdiction over the person who is to be bound by the order.

■ On remand, Judge Motyka found that Master Brown had issued the long-term protective order directing Olson to stay away from Cay Jackson's residence without giving Olson the prior notice and opportunity to be heard mandated by statute.  In light of Judge Motyka's finding, we conclude that the district court never acquired personal jurisdiction over Olson, and the protective order issued against him was void.[13]

*Was Olson nevertheless required to obey the void protective order?*

■ Judge Motyka held that even if the protective order was void, Olson could still be convicted of violating the order because he had been served with a copy of the order and was aware of its terms.  He reasoned, based on our decisions in *MacDonald* and *Jacko*, that Olson was obliged to comply with the void order until it was vacated by the court.

In reaching this conclusion, Judge Motyka failed to properly distinguish between short-term domestic violence protective orders, which the legislature has authorized courts to issue ex parte, and long-term protective or-

---

**6.**  *Olson,* Memorandum Opinion and Judgment No. 4442 at 8, 2001 WL 1007464 at *4.

**7.**  *Id.* at 5, 11–23, 2001 WL 1007464 at *3, 6.

**8.**  981 P.2d 1075 (Alaska App.1999).

**9.**  997 P.2d 1187 (Alaska App.2000).

**10.**  AS 18.66.100(b)-(c) authorize courts to prohibit the respondent indefinitely from committing or threatening to commit domestic violence; other provisions of a long-term protective order, for example those barring the respondent from approaching the petitioner's residence, are effective for six months unless the court dissolves them earlier at the request of either party; AS 18.66.110(a)-(b) authorize emergency and ex parte protective orders, which expire, respective-

ly, in 72 hours or 20 days, unless the court dissolves them earlier.

**11.**  AS 18.66.100(b).

**12.**  *Id.*

**13.**  *See Holt,* 420 P.2d at 471; *see also Aguchak,* 520 P.2d at 1354; *Smith v. Smith,* 117 Ariz. 249, 571 P.2d 1045, 1048 (Ariz.App.1977); *Lee v. Placer Title Co.,* 28 Cal.App.4th 503, 33 Cal. Rptr.2d 572, 575 (1994); *Faulkner v. Kirkes,* 276 P.2d 264, 265 (Okla.1954); *Farrington v. Swenson,* 210 N.W.2d 82, 85 (N.D.1973); *American Family Mut. Ins. Co. v. Royal Ins. Co. of America,* 167 Wis.2d 524, 481 N.W.2d 629, 632–33 (1992); *cf. State, Dep't of Corrections v. Kila, Inc.,* 884 P.2d 661, 661–62 (Alaska 1994); *see generally* 62B Am.Jur.2d, *Process* § 4 at 748–49 (1990).

ders, which the legislature has declared may not be issued without giving the respondent notice and an opportunity to be heard. We have upheld convictions for violating short-term domestic violence protective orders where the defendant knew of the order but was not properly served,[14] and where the order was later vacated by the court.[15] But in those instances, the court had jurisdiction to issue the order without prior notice to the defendant. We have never held that a person must comply with an order that the legislature has said may not be issued ex parte if that person had no notice or opportunity to be heard before the order was issued.

The weight of authority is against adopting such a doctrine. The well-settled rule in other jurisdictions is that a person may collaterally attack a judgment as void on the ground that the court issuing the judgment lacked jurisdiction over the person or subject matter, or the authority to render the particular judgment.[16] Applying this rule, courts have reversed convictions for criminal contempt of orders that were issued without notice to the party charged with contempt.[17] By analogy, Olson could not be convicted for violating a protective order that was issued by a court that had no jurisdiction to issue the order.

In *Jacko*, we recognized that this general rule did not apply in the case of temporary restraining orders. We ruled that "a person is obliged to obey a restraining order—even an illegal one—until, through judicial process, the order is vacated or reversed."[18] We concluded that Jacko was required to obey the 20–day protective order and could be convicted for violating the order, even though the court ultimately held that it had no authority to restrain Jacko because Jacko

and the petitioner were not "household members."

But a short-term domestic violence protective order is a temporary order issued to prevent an imminent threat of domestic violence, and the legislature has authorized courts to issue such protective orders ex parte. Because the orders are temporary, and the need is urgent, we concluded in *MacDonald* that notice of the order after it is issued suffices to protect the respondent's due process rights.[19]

■ Olson's case presents a different circumstance. The long-term protective order issued against him was not an emergency order aimed at averting an immediate threat of domestic violence. The legislature has declared that courts may not issue long-term protective orders without prior notice and an opportunity to be heard. Therefore, the general rule that a person may collaterally attack a judgment for lack of personal jurisdiction applies. Olson may not be punished for failing to comply with the protective order in this case because the court did not take the statutorily mandated steps to acquire personal jurisdiction over him.[20] We therefore conclude that Olson's lack of notice before the protective order was issued was a valid defense to the charge of violating the order.

*Did Olson receive ineffective assistance of counsel?*

Because Olson raised this claim for the first time in his application for post-conviction relief, he is only entitled to post-conviction relief if he can show that his trial attorney was ineffective for failing to raise this defense when Olson was prosecuted.

---

**14.** *See MacDonald*, 997 P.2d at 1189–90.

**15.** *See Jacko*, 981 P.2d at 1077–78.

**16.** *See* Annotation, *Right to Punish for Contempt for Failure to Obey Court Order or Decree Either Beyond Power or Jurisdiction of Court or Merely Erroneous*, 12 A.L.R.2d 1059, 1067 (1950), and Later Case Service (1997).

**17.** *See, e.g., Smith v. People*, 2 Colo.App. 99, 29 P. 924, 926–27 (1892); *Williams v. Koelsch*, 67 Idaho 341, 180 P.2d 237, 240 (1947); *Sinquefield v. Valentine*, 160 Miss. 61, 133 So. 210, 211 (1931);

*People ex rel. Sandnes v. Sheriff of Kings County*, 164 Misc. 355, 299 N.Y.S. 9, 13–14 (1937); *Ex parte Renfro*, 115 Tex. 82, 273 S.W. 813, 814 (1925).

**18.** *Jacko*, 981 P.2d at 1078.

**19.** *See MacDonald*, 997 P.2d at 1189–90.

**20.** *See generally* 12 A.L.R.2d 1059 § 2, § 3, at 1067 and § 19, at 1090–91.

In *Risher v. State*,[21] the supreme court adopted a two-prong test for evaluating claims of ineffective assistance of counsel.[22] First, defendants must show that their counsels' performance fell below the "range of competence displayed by one of ordinary training and skill in the criminal law."[23] Second, defendants must show that this lack of competency had an adverse impact on the case that contributed to their convictions.[24] Defendants have the burden of proving their counsels' lack of competency by clear and convincing evidence.[25] This includes the burden to rebut the strong presumption that the attorneys' actions stemmed from "sound tactical considerations."[26]

■ Because Olson has established that the long-term protective order was void and that he could not be convicted of violating it, he has shown that his attorney's failure to raise this claim affected the outcome of his trial. Olson's trial attorney concedes that there was no strategic reason not to attack the court's personal jurisdiction on this basis. Thus, the only remaining question is whether an attorney of ordinary training and skill would have challenged the court's jurisdiction to convict Olson for violating the long-term order because it was issued without prior notice or opportunity to be heard.

■ As noted earlier, AS 18.66.100(b) requires the court to "schedule a hearing and provide at least 10 days' notice to the respondent of the hearing and of the respondent's right to appear and be heard" whenever a petition for a protective order is filed. This statutory language should have alerted Olson's attorney that any order issued without notice would be void. Olson's trial attorney acknowledged in his affidavit that Olson told him before trial that he had received no notice of the hearing at which the long-term order was issued. The State does not contest this assertion. Although the long-term order contradicted Olson's claim—a box was checked on the order indicating that Olson

had received notice—a transcript of the hearing reveals no discussion of whether Olson had received notice, and there is no return of service in the record. Given these circumstances, we conclude that an attorney of ordinary competence would have challenged the court's jurisdiction to issue the long-term protective order without the notice and opportunity to be heard mandated by statute. We therefore conclude that Olson's trial attorney provided ineffective assistance of counsel.

*Conclusion*

For the foregoing reasons, we REVERSE the judgment of the district court. Olson is entitled to post-conviction relief, and that relief is reversal of his conviction.

**21.** 523 P.2d 421 (Alaska 1974).

**22.** *Id.* at 424–25.

**23.** *Id.* at 424.

**24.** *State v. Jones*, 759 P.2d 558, 573 (Alaska App. 1988); *Risher*, 523 P.2d at 424–25.

**25.** AS 12.72.040; Alaska R.Crim. P. 35.1(g).

**26.** *Jones*, 759 P.2d at 569.