65 A.3d 281

B.C., PLAINTIFF, v. T.G., DEFENDANT.

Superior Court of New Jersey
Chancery Division Ocean County
Family Part

Decided January 31, 2013.

456

*Jill Thiemann* for plaintiff (*O'Malley, Surman & Michelini*, attorneys).

*T.G.*, defendant pro se.

L.R. JONES, J.S.C.

This case presents the following legal issue of first impression: When a victim of domestic violence is assaulted while pregnant,

may the court enter a final restraining order which includes the victim's unborn child as an additional protected "person" under New Jersey's Prevention of Domestic Violence Act, *N.J.S.A.* 2C:25-17 to-35? [1]

 Under New Jersey law, a fetus is not considered a person. Nonetheless, the court holds that when a domestic violence victim is assaulted while pregnant, the court may enter a restraining order containing an advance protection provision, which states that the victim's unborn child shall, upon birth, be automatically included as an additional person protected from the defendant unless and until further court order.

## FACTUAL BACKGROUND

Plaintiff (age seventeen) and defendant (age eighteen) had a dating relationship, which ended shortly after plaintiff informed defendant that she was pregnant with his child. Defendant did not want plaintiff to have the baby.[2] Shortly thereafter, defendant committed domestic violence against plaintiff. Specifically, under the guise of wanting to discuss pre-natal medical appointments for the unborn child, defendant led plaintiff to a location where four other individuals forcibly dragged her from her car, threw her to the ground and, at defendant's direction, proceeded to beat her. Defendant then joined in the assault by pulling plaintiff up, grabbing her by her ribs, and throwing her back down as her head struck against the ground. Plaintiff incurred multiple injuries in the attack, and it is unknown whether the fetus suffered damage in the assault.

---

[1] For the remainder of this opinion, this statute shall be referenced as either the "Domestic Violence Act" or "Act".

[2] During cross-examination by plaintiff's attorney, defendant conceded that he did not want plaintiff to have the baby, but contended that he felt the decision on the issue ultimately belonged to plaintiff.

At trial, plaintiff testified credibly as to the details of the assault. Further, the incident was witnessed by a third person who testified and corroborated plaintiff's version of events. Additionally, plaintiff's attorney introduced into evidence several photos which graphically depicted plaintiff's injuries.

Defendant testified as well. He admitted that plaintiff was assaulted in his presence. However, he denied participating in the attack or having any role in directing or encouraging the other individuals to beat her. Defendant's denial was not credible, and the court found that he had in fact ambushed plaintiff and committed egregious domestic violence against her in a premeditated and orchestrated group attack. Accordingly, the court entered a final restraining order, prohibiting defendant from having any contact with plaintiff.

Further, at plaintiff's request and as authorized under the Domestic Violence Act, the court added plaintiff's parents and three siblings as additional "protected persons" under her restraining order so that defendant was prohibited from contacting them as well.

Given the nature of the violence which defendant perpetrated upon a pregnant victim, and in recognition of New Jersey's strong public policy of protecting survivors of abuse, the court has further considered the novel legal issue of whether plaintiff's restraining order can also permissibly include some element of appropriate advance protection for plaintiff's unborn child, to take automatic effect upon birth so as to protect the child from defendant. The court finds under the facts of this case that such an order of advance protection is warranted and legally appropriate under our law.

## LEGAL ANALYSIS

Pursuant to New Jersey's Domestic Violence Act, *N.J.S.A.* 2C:25–17 to –35, a court may issue a final restraining order which includes a victim's family members as additional protected per-

sons. Specifically, the statute authorizes the court to restrain a defendant "from entering the residence, property, school or place of employment of the victim *or of other family or household members of the victim."* *N.J.S.A.* 2C:25–29(b)(6) (emphasis added). Additionally, the court may order a defendant "to stay away from any specified place frequented regularly by the victim *or other family or household members."* *N.J.S.A.* 2C:25–29(b)(6) (emphasis added).

Further, the court may restrain the defendant from making communications likely to cause annoyance or alarm to the victim *or other family members.* *N.J.S.A.* 2C:25–29(b)(7). Still further, the court may prohibit a defendant "from stalking or following, or threatening to harm, to stalk or to follow, the complainant *or any other person named in the order* in a manner that, taken in the context of past actions of the defendant, would put the complainant in reasonable fear that the defendant would cause the death or injury of the complainant or any other person." *N.J.S.A.* 2C:25–29(b)(17) (emphasis added).

In enacting these provisions, the New Jersey Legislature clearly recognized a need to assist domestic violence victims by extending protection to their immediate family members as well. Otherwise, any abuser could simply do an end-run around a restraining order and continue to vicariously harass a victim by contacting, bothering, and intimidating those people who live in the victim's everyday circle of life. Even further, an abuser could attempt to physically harm a victim's family members, either out of anger or a desire to further hurt and menace the victim. Based on factors such as age or disability, some family members may be particularly susceptible targets for further violence.

Vulnerable relatives in need of protection may logically include a victim's young children. While generally a child may not fit within the technical definition of a direct "victim" of domestic violence under the Act, (*see N.J.S.A.* 2C:25–19(e)),[3] a child can in

---

[3] A minor, however, can be a direct victim and plaintiff in a domestic violence case if there was a dating relationship with the defendant. *See N.J.S.A.* 2C:25–

fact qualify for coverage as an additional protected person under an adult victim's restraining order.[4] This coverage is available whether or not there is a family relationship between the child and the abuser.

Even though a child may not always fit within the technical definition of a "victim" under the Domestic Violence Act, in certain factual circumstances there is strong logic and necessity in including a child as an additional "protected person" under a victim's restraining order. Indeed, the New Jersey Legislature has expressly declared that "domestic violence is a serious crime against society," and that "it is therefore the intent of the Legislature to assure the victims of domestic violence the maximum protection from abuse the law can provide." *N.J.S.A.* 2C:25–18. The Legislature has further explicitly recognized that "there is a positive correlation between domestic abuse and child abuse," *N.J.S.A.* 2C:25–18, and that "children, even when they are not themselves physically assaulted, suffer deep and emotional lasting emotional effects from exposure to domestic violence." *N.J.S.A.* 2C:25–18.

If the abuser is also the victim's former spouse or partner and the child's other parent, the Act expressly provides additional safety protections for both the victim and child which may be implemented by the court. First, the court "shall presume" that the best interests of the child are served by an award of temporary custody to the non-abusive parent. *N.J.S.A.* 2C:25–29(b)(11). Second, the court shall consider suspension of the defendant's

---

19(d). In this case, plaintiff herself is a minor, but nonetheless clearly qualifies as a domestic violence victim under the Act because she had a dating relationship with defendant.

[4] In a case where the abuser of the pregnant victim is also allegedly the child's putative father, there may well be other ancillary issues for the court to determine upon future application by either party, including but not limited to paternity testing, appropriateness of parenting time requests, conditions and parameters, child support, health insurance, life insurance, and other related issues. In this case, as the child has not yet been born, none of these issues are presently before the court.

parenting time and hold an emergency hearing upon an application made by the plaintiff certifying under oath that the defendant's access to the child pursuant to the parenting time order has threatened the safety and well-being of the child. *N.J.S.A.* 2C:25–29(b)(3)(b).

Third, the court shall consider a request by a custodial parent, who has been subjected to domestic violence by a person with parenting time rights to a child in the parent's custody, for an investigation or evaluation by the appropriate agency to assess the risk of harm to the child prior to the entry of the parenting time order. Any denial of such a request must be on the record and shall only be made if the judge finds the request to be arbitrary or capricious. *N.J.S.A.* 2C:25–29(b)(3)(a).

Fourth, any order providing the defendant with parenting time shall be designed so as to protect the safety and well-being of the plaintiff and minor children. *N.J.S.A.* 2C:25–29(b)(3).

Accordingly, in a domestic violence case where the plaintiff and the defendant have a child together, the entry of a final restraining order may trigger all types of additional statutory safeguards designed by the Legislature to protect both the victim and child. Thus, in the present case, had plaintiff already given birth to the baby *before* the date of the final hearing, the final restraining order clearly could have included the aforementioned safeguards to protect the infant in her care. However, as of the date of the hearing, the baby was still unborn and within the mother's womb, thereby raising a legal issue which no prior reported opinion squarely addresses and answers one way or the other.

As a starting point in the analysis, New Jersey courts have repeatedly and clearly stressed that a fetus is not actually considered a "person" until after live birth. As recently noted by the New Jersey Supreme Court in *Acuna v. Turkish*, 192 *N.J.* 399, 403, 930 *A.*2d 416 (2007), "[t]here is not even remotely a consensus among New Jersey's medical community or citizenry" that an embryo is an "existing human being." Over the years, this concept has been expressed in various contexts by various courts.

See *Giardina v. Bennett*, 111 *N.J.* 412, 413, 545 *A.2d* 139 (1988) (New Jersey's Wrongful Death Act does not provide a cause of action for wrongful death of fetus before birth or who does not survive birth, as a fetus is not yet a person); *In re A.W.S.*, 182 *N.J.Super.* 278, 440 *A.2d* 1144 (App.Div.1981) (unborn fetus is not human being within meaning of criminal homicide provisions of the Code of Criminal Justice); *N.J. Div. of Youth and Family Servs. v. L.V.*, 382 *N.J.Super.* 582, 590, 889 *A.2d* 1153 (Ch.Div.2005),[5] (refusal by HIV-positive mother to take recommended medication during pregnancy to reduce risk to unborn child is not act of abuse or neglect under *N.J.S.A.* 9:6–8–44; protections afforded by statute are limited to the child's situation after birth.)

██ While a fetus is not legally considered equivalent to a "person", it is equally true that under New Jersey law, once the fetus is actually born alive, the child becomes a person and has legal rights which may relate to events and circumstances that transpired prior to birth. These rights include a right to protection under the law from pre-birth, wrongful acts of others. For example, in *In re Guardianship of K.H.O.*, 161 *N.J.* 337, 349, 736 *A.2d* 1246 (1999), the Supreme Court held that when a child was born addicted to drugs and suffering from symptoms of withdrawal as a result of her mother's substance abuse during pregnancy, an order could be entered finding the mother harmed the child by endangering the child's pre-birth health and development.[6]

---

[5] Subsequent to the court's decision in this case but prior to publication, the New Jersey Supreme Court issued an opinion in the matter of *N.J. Dept. of Children v. A.L.*, 213 *N.J.* 1, 59 *A.3d* 576 (2013). Consistent with the principles set forth in *N.J. Div. of Youth and Family Servs. v. L.V.*, the Court concluded that New Jersey's child abuse/neglect statute is not applicable in the context of a pregnant mother taking drugs, since the statute does not define a child to include a fetus. *Id.* at 20, 59 *A.3d* 576.

[6] *In re Guardianship of K.H.O.*, differs from *N.J. Dept. of Children v. A.L.* in that in the former, the child was born with a medically verified physical injury (drug addiction/withdrawal) from the pregnant mother's pre-natal behavior (*K.H.O., supra,* 161 *N.J.* at 363, 736 *A.2d* 1246), while in the latter, there was no such medically substantiated injury or condition.

Similarly, in *Smith v. Brennan*, 31 *N.J.* 353, 366, 157 *A.2d* 497 (1960), the Supreme Court held that a child who survived birth had a right of action in tort against a defendant for injuries incurred when still a fetus. Further, in *Sobeck v. Centennial Ins. Co.*, 234 *N.J.Super.* 445, 451–54, 560 *A.2d* 1309 (Law Div.1988), the court held that a live-born child could seek no-fault, PIP health insurance coverage for pre-birth injuries incurred in a motor vehicle accident.

As emphasized by the Court in *Smith*, "there is no question that conception sets in motion biological processes which if undisturbed will produce what everyone will concede to be a person in being." *Smith, supra*, 31 *N.J.* at 364, 157 *A.2d* 497. Further, as noted by the *Sobeck* court, "it cannot be said that our Legislature and courts have been unresponsive to the rights of the unborn." [7] *Sobeck, supra*, 234 *N.J.Super.* at 452, 560 *A.2d* 1309. In comparing and reconciling the principles of these diverse cases, the common thread is the concept that while a fetus is not yet legally a person, upon live birth the fetus becomes a person, with rights of redress and protection from harms which originated before birth.

As noted, in the realm of domestic violence litigation, there are no known reported cases which directly deal with the issue presented herein. There is, however, one reported New Jersey case which, in another context, generally addresses the issue of pregnancy and the status of an unborn child. In *Croswell v. Shenouda*, 275 *N.J.Super.* 614, 620, 646 *A.2d* 1140 (Ch.Div.1994), the trial court held that, for purposes of establishing a family-type relationship between parties, under the Domestic Violence Act, a fetus could not be considered a child-in-common of the parties in order to establish jurisdiction under the Act. It is significant, however, that *Croswell* was decided on May 6, 1994. Only three

---

[7] *See also State v. Anderson*, 135 *N.J.Super.* 423, 429, 343 *A.2d* 505 (Law Div.1975), (fetuses which are the victims of a criminal blow or wound upon their mother and are subsequently born alive and thereafter die by reason of a chain of circumstances precipitated by such blow or wound, may be victims of murder), *rev'd on other grounds*, 173 *N.J.Super.* 75, 413 *A.2d* 611 (App.Div.1980).

months later, on August 11, 1994, the New Jersey Legislature expressly expanded the jurisdictional parameters of the Domestic Violence Act, and supplemented the definition of a victim, to include any person "who has been subjected to domestic violence by a person ... with whom the victim anticipates having a child in common, if one of the parties is pregnant." *N.J.S.A.* 2C:25–19(d). Further, this 1994 amendment may logically be considered in conjunction with the Act's 1991 *Statement of Legislative Findings,* in which the Legislature expressly found and declared that "*a significant number of women who are assaulted are pregnant.*" *N.J.S.A.* 2C:25–18. By reading the 1991 legislative statement and 1994 legislative amendment *in pari materia,* one may reasonably conclude that our Legislature recognized a socially significant and special need to protect pregnant victims of domestic violence.

In considering (a) the general public policy of protecting victims of domestic violence, (b) the expansive coverage of restraining orders to include the victim's immediate family members, and (c) the special need to protect pregnant victims of violence, there is an inherent logic in allowing a pregnant domestic violence victim to obtain pre-birth, advance protection for her unborn child against a violent abuser. This concept is particularly relevant in a case such as the present one, where the violence was so blatant and dangerous in nature.

The legal question becomes whether the court has to wait until the baby is born before taking protective action, thereby requiring the victim to have to return to court at some later date and file another application to add the child onto her existing restraining order. The court finds in this case that the plaintiff should not be required to have to return to court a second time in order to obtain protection for the baby following birth. There is nothing in either our law or public policy which prohibits a court of equity from entering a final restraining order protecting a pregnant victim of domestic violence by including an advance protection provision for her unborn child, to take effect immediately upon the child's live birth. Such a provision does not equate a fetus with a

person until after live birth, and more importantly, comports with the spirit of the Domestic Violence Act in striving to provide a pregnant victim with "the maximum protection from abuse the law can provide." *N.J.S.A.* 2C:25–18.

In another context, there is persuasive authority for the concept that the State may enter an order of protection for an unborn child, to take effect automatically upon the condition subsequent of the child's birth. In *Hoener v. Bertinato,* 67 *N.J.Super.* 517, 523–25, 171 *A.*2d 140 (Juv. & Dom.Rel.Ct., 1961), the court held, in a parental neglect/unfitness case under *N.J.S.A.* 9:2–9, that it was permissible to enter a court order which directed that, upon an unborn child's birth, custody of the child may vest in the State of New Jersey for the purpose of providing the infant with necessary medical treatment and protection. The fact that the child had not yet been born at the time of the order did not divest the court of jurisdiction to act appropriately. *Id.* at 523–24, 171 *A.*2d 140. Said the court: "An interpretation of the statute which would require an emergency court hearing after birth in every case ... does not comport with good common sense." *Id.* at 525, 171 *A.*2d 140.

Similarly, in this domestic violence case, where the pregnant plaintiff has been physically assaulted and abused by the defendant, there is little sense in requiring the victim to have to return to court again immediately after the birth of the child for an emergent hearing in order to add the baby to her final restraining order. This court is well aware that for many victims of domestic violence, there is often a substantial amount of emotional stress and trauma associated with having to go to court to obtain a final restraining order in the first place. Reasons for such stress may include, but are not limited to, trepidation over facing an abuser, and fear and discomfort over having to testify in open court about very personal and private matters.

When a pregnant victim of domestic violence obtains a restraining order against an abuser, and thereafter gives birth to a child, the last place the victim may want to go immediately after

delivery is right back to the courthouse again. The negative anticipation of such an event may itself be harmful to an expectant mother and unborn child. Indeed, stress is a medically recognized risk factor in bringing on premature labor and birth. See *Sobeck*, *supra*, 234 *N.J.Super.* at 460, 560 *A.*2d 1309. Further, a new parent may be either unable or unwilling to immediately return to domestic violence court immediately following childbirth, for various reasons, including but not limited to (a) need for rest and recovery from difficult labor, (b) medical complications for mother or child following delivery, and/or (c) an innate desire to physically be with the baby and personally focus on the newborn's needs, rather than either carrying the baby to the courthouse or leaving the infant in someone else's care.

Still further, a preoccupied new parent might simply forget or overlook the necessity of returning to court, thereby leaving the newborn child completely unprotected under the order. This may particularly occur when the new parent is very young, and perhaps not as mature and experienced as others in handling the responsibilities and pressures of adult life. In the present case, the pregnant victim is only seventeen years old and still a legal minor herself.

In short, when an abuser assaults a pregnant victim, it is often highly appropriate to protect the child upon birth from the abuser. Reciprocally, it is not necessarily appropriate or fair to require the victim to return to the courthouse immediately following childbirth in order to secure the newborn's status as an additional protected person under her restraining order.

The concept of providing post-birth protection for the victim's child, in advance of actual birth itself, is consistent with the strong public policy of preventing and capping the escalation of ongoing domestic violence. Indeed, the domestic violence statute is entitled the *"Prevention* of Domestic Violence Act" for a reason. The importance of preventing ongoing violence is overwhelmingly highlighted by the shocking scenario presented in this case. Even if paternity testing ultimately verifies that defendant is the child's

father, the factual circumstances herein reflect that, absent further intervention and documented proof of defendant's rehabilitation, the present risk of danger and ongoing further violence to plaintiff and her loved ones remains clear. The New Jersey Supreme Court has expressly recognized the reality that domestic violence often repeats itself in cycles. *See State v. Kelly*, 97 *N.J.* 178, 193–94, 478 *A.*2d 364 (1984). Accordingly, maximum protection for this plaintiff and the baby is warranted.

■ Our Supreme Court has recognized that domestic violence is a serious problem in our society, and "persists as a grave threat to the family, particularly to women and children." *Cesare v. Cesare*, 154 *N.J.* 394, 397–98, 713 *A.*2d 390 (1998). The Domestic Violence Act is intended to assure victims of domestic violence the maximum protection from abuse the law can provide. *Id.* at 399, 713 *A.*2d 390. Because the Act is remedial in nature, it is to be liberally construed to achieve its salutary purpose. *Id.* at 400, 713 *A.*2d 390. Our law is particularly solicitous of victims of domestic violence, *State v. Hoffman*, 149 *N.J.* 564, 584, 695 *A.*2d 236 (1997), as those who commit acts of violence may have an unhealthy need to control and dominate their partners. *Id.* at 585, 695 *A.*2d 236. The fears and turmoil a victim has experienced should not be trivialized. *Id.* at 586, 695 *A.*2d 236.

■ For the foregoing reasons, the court shall include a specific advance protection provision in plaintiff's restraining order, expressly providing that plaintiff's unborn child shall, upon birth, be automatically deemed an additional protected person unless or until further order. Following birth, the plaintiff may forward a copy of the baby's birth certificate to the court for inclusion of the child's formal name in the order via administrative amendment.