*Notice: This opinion is subject to correction before publication in the PACIFIC REPORTER. Readers are requested to bring errors to the attention of the Clerk of the Appellate Courts, 303 K Street, Anchorage, Alaska 99501, phone (907) 264-0608, fax (907) 264-0878, email corrections@akcourts.us.*

THE SUPREME COURT OF THE STATE OF ALASKA

| | | |
|---|---|---|
| SARAH M. WHALEN, | ) | |
| | ) | Supreme Court No. S-16200 |
| Appellant, | ) | |
| | ) | Superior Court No. 3AN-15-03474 CI |
| v. | ) | |
| | ) | O P I N I O N |
| SEAN PATRICK WHALEN, | ) | |
| | ) | No. 7268 – August 10, 2018 |
| Appellee. | ) | |
| _____ | ) | |

Appeal from the Superior Court of the State of Alaska, Third Judicial District, Anchorage, Frank A. Pfiffner, Judge.

Appearances: Gregory R. Henrikson, Walker & Eakes, Anchorage, for Appellant. No appearance by Appellee Sean Patrick Whalen. Christine Pate, Sitka, for Amicus Curiae Alaska Network on Domestic Violence and Sexual Assault. Elizabeth Hague, Freshfields Bruckhaus Deringer, Washington, D.C., for Amicus Curiae Domestic Violence Legal Empowerment and Appeals Project.

Before: Stowers, Chief Justice, Winfree, Maassen, Bolger, and Carney, Justices.

STOWERS, Chief Justice.
MAASSEN, Justice, with whom WINFREE, Justice, joins, dissenting in part.

## I. INTRODUCTION

Sarah and Sean Whalen's relationship had been plagued by domestic violence prior to the incidents involved in this appeal. Sarah had petitioned for multiple

domestic violence protective orders against Sean, some of which had been granted. In November 2015 Sarah filed a petition for a long-term domestic violence protective order against Sean. The superior court ruled that she could not rely on Sean's past history of domestic violence alone to obtain a new protective order but had to show that Sean had committed a new incident of domestic violence since the previous protective order. The court also found that Sarah had not proved any new incident and denied her petition. Sarah appeals, arguing that she should be allowed to rely on past incidents of domestic violence that had supported past protective orders to obtain a new protective order. In the alternative she argues that there had been a new incident of domestic violence. We affirm the superior court's denial of the petition for a domestic violence protective order.

## II.    FACTS AND PROCEEDINGS

Sarah M. Whalen and Sean Patrick Whalen married in May 2004 and have three children. They separated in April 2012. In June 2015 the superior court issued a decree of divorce.

Sarah had petitioned for and received multiple domestic violence protective orders against Sean, most recently in September 2014. In September 2015 Sarah filed a request to modify the September 2014 protective order. Because most provisions of long-term protective orders last for only one year,[1] this was effectively a request to renew or extend an expiring order. Sarah used a court-form domestic violence petition to file her motion. On the form, she selected the option to request that the court "modify the . . . long-term protective order issued in this case as follows" and wrote, "Extend the order for an additional year and modify visitation." In the section for "reason(s) for this request" she wrote that she was "still in fear" of Sean for herself and for their children.

---

[1]    *See* AS 18.66.100(b)(2).

The superior court held a hearing in November 2015 and orally denied the motion. The court explained that Sarah could not get an extension of a previously issued protective order but would have to file a petition for a new long-term protective order. Sarah did not appeal this ruling.

Later that month Sarah filed a petition for ex parte and long-term domestic violence protective orders.[2] In the petition she recounted a recent incident involving Sean and the children at a lake and described Sean's history of domestic violence. The superior court held a hearing in December 2015. Sarah and Sean testified. Sarah was represented by counsel; Sean represented himself. The court explained at the outset of the hearing that under the domestic violence protective order statute a party could not receive a new protective order where a prior protective order had been issued unless there was a new incident of domestic violence. The court instructed Sarah not to present evidence of incidents of domestic violence that occurred before her last protective order was issued. In accordance with this instruction the parties gave testimony only concerning incidents that took place after the September 2014 order.

Testimony addressed three separate incidents: Sarah alleged that Sean had tampered with her house's heating system, that he had entered her garage to collect his possessions, and that he had screamed at and intimidated their children at the lake. The court declined to find by a preponderance of the evidence that Sean had tampered with Sarah's heating system. Next the court found that Sarah had given Sean permission to enter her premises to collect his possessions and concluded that Sean therefore had not

---

[2] An ex parte protective order lasts for 20 days. AS 18.66.110(a). A long-term protective order may be issued only after a hearing for which the respondent received proper notice. AS 18.66.100(b).

committed criminal trespass in the second degree, a domestic-violence crime.[3]  Finally, the court concluded, and Sarah conceded, that the incident with the children at the lake did not constitute a new incident of domestic violence.  The court orally denied the petition and subsequently issued a written order.  Sarah appeals the court's legal rulings that the domestic violence protective order statute requires a new incident of domestic violence for a new protective order and that Sean did not commit second-degree criminal trespass.  Sean does not participate in this appeal.  Amici curiae Alaska Network on Domestic Violence and Sexual Assault and Domestic Violence Legal Empowerment and Appeals Project filed a brief in support of Sarah's position that the statute does not require a new incident of domestic violence for a new protective order to be issued.

## III.   STANDARD OF REVIEW

Sarah's appeal raises issues of res judicata and the interpretation of the domestic violence protective order statute and the second-degree criminal trespass statute.  "Whether  res judicata applies is a question of law that we review de novo."[4] "We review the interpretation of a statute de novo, adopting the rule of law most persuasive in light of precedent, reason, and policy."[5]

## IV.   DISCUSSION

### A.   The Domestic Violence Protective Order Statute

Alaska Statute 18.66.100 provides a statutory method for "[a] person who is or has been a victim of a crime involving domestic violence" to obtain "a protective

---

[3]   Criminal trespass against a former spouse is a crime involving domestic violence.  *See* AS 18.66.990(3)(C), (5)(A).

[4]   *Pister v. State, Dep't of Revenue*, 354 P.3d 357, 362 (Alaska 2015) (quoting *Smith v. CSK Auto, Inc.*, 132 P.3d 818, 820 (Alaska 2006))

[5]   *L.D.G., Inc. v. Brown*, 211 P.3d 1110, 1118 (Alaska 2009) (citing *Alaskans for Efficient Gov't, Inc. v. Knowles*, 91 P.3d 273, 275 (Alaska 2004)).

order against a household member";[6] "household member" is defined to include a former spouse no longer living with the victim.[7] "If the court finds by a preponderance of evidence that the respondent has committed a crime involving domestic violence against the petitioner, regardless of whether the respondent appears at the hearing, the court may order any relief available under [AS 18.66.100(c)]."[8] The statute further provides that "provisions of a protective order issued under . . . [AS 18.66.100(c)(1)] are effective until further order of the court" and that those issued under "(c)(2)-(16) . . . are effective for one year unless earlier dissolved by court order."[9] Subsection (c)(1) allows for protective orders that "prohibit the respondent from threatening to commit or committing domestic violence, stalking, or harassment."[10] Subsections (c)(2)-(15) allow courts to issue orders that prohibit different types of interactions with the petitioner, allocate use of property, and assign temporary custody of children and child support obligations, among other things.[11] Subsection (c)(16) allows the court to "order other relief the court determines necessary to protect the petitioner or any household member."[12] Subsection (e) provides that "[a] court may not deny a petition for a protective order under this

---

[6]     AS 18.66.100(a).

[7]     AS 18.66.990(5)(A).

[8]     AS 18.66.100(b).  "[C]rime involving domestic violence" is defined in AS 18.66.990(3).

[9]     AS 18.66.100(b).

[10]     AS 18.66.100(c)(1).

[11]     AS 18.66.100(c)(2)-(15).

[12]     AS 18.66.100(c)(16).

section solely because of a lapse of time between an act of domestic violence and the filing of the petition."[13]

Sarah has petitioned for and received multiple protective orders under this framework. She now seeks a new protective order based on the same incidents of domestic violence for which she received the prior orders.

Sarah's and amici's briefs discuss the importance of protections against domestic violence generally and of renewal of protective orders specifically. Amici note the high rates of domestic violence in Alaska[14] and the cyclical nature of domestic violence situations.[15] There is no question that Sarah's and amici's policy arguments are compelling. But at its core this appeal involves questions of res judicata and statutory interpretation. The superior court correctly ruled that Sarah could not receive a new protective order without showing a new incident of domestic violence.

---

[13] AS 18.66.100(e).

[14] The 2015 Alaska Victimization Survey, analyzed by the University of Alaska Anchorage Justice Center for the Council on Domestic Violence and Sexual Assault, reported that 40% of adult women residing in Alaska experienced intimate partner violence. UNIV. OF ALASKA ANCHORAGE JUSTICE CTR. & COUNCIL ON DOMESTIC VIOLENCE & SEXUAL ASSAULT, INTIMATE PARTNER VIOLENCE AND SEXUAL VIOLENCE IN THE STATE OF ALASKA: KEY RESULTS FROM THE 2015 ALASKA VICTIMIZATION SURVEY (2015), https://www.uaa.alaska.edu/academics/college-of-health/departments/justice-center/research/alaska-victimization-survey/_documents/avs-alaska-statewide-2015.summary.1103.051a.pdf.

[15] *See* Mary Ann Dutton, *Understanding Women's Responses to Domestic Violence: A Redefinition of Battered Woman Syndrome*, 21 HOFSTRA L. REV. 1191, 1208-09 (1993); *see also B.C. v. T.G.*, 65 A.3d 281, 288 (N.J. Super. Ch. Div. 2013) ("The New Jersey Supreme Court has expressly recognized the reality that domestic violence often repeats itself in cycles." (citing *State v. Kelly*, 478 A.2d 364 (1984))); *Krank v. Krank*, 541 N.W.2d 714, 718 (N.D. 1996) ("It is common for domestic abuse to occur as a stage in a cycle of violence.").

### 1. Res judicata extinguished Sarah's claim for a new protective order.

"The doctrine of res judicata, or claim preclusion, 'prevents a party from suing on a claim which has been previously litigated to a final judgment by that party . . . .' "[16] "When a valid and final personal judgment is rendered in favor of the plaintiff[,] . . . [t]he plaintiff cannot thereafter maintain an action on the original claim or any part thereof, although [s]he may be able to maintain an action upon the judgment."[17] The question, then, is whether Sarah is attempting to receive a second judgment on a claim that she has previously asserted.

Alaska Statute 18.66.100 sets forth the elements of a claim for a domestic violence protective order: a person may petition for and receive a domestic violence protective order if "the respondent has committed a crime involving domestic violence against the petitioner." Sarah's claim against Sean for a domestic violence protective order accrued when Sean committed a crime involving domestic violence against her. Under the doctrine of claim preclusion, this claim was then extinguished when she received a valid and final personal judgment against him in the form of a domestic violence protective order. Sarah "may be able to maintain an action upon th[is] judgment," but she may not "maintain an action on the original claim."[18]

Sarah argues that protective orders are a form of injunctive relief that addresses an abatable condition and therefore "res judicata does not apply."[19] Sarah cites

---

[16] *Girdwood Mining Co. v. Comsult LLC*, 329 P.3d 194, 200 (Alaska 2014) (quoting *McElroy v. Kennedy*, 74 P.3d 903, 906 (Alaska 2003)).

[17] RESTATEMENT (SECOND) OF JUDGMENTS § 18(1) (Am. Law Inst. 1982).

[18] *Id.*

[19] *Van Deusen v. Seavey*, 53 P.3d 596, 600 (Alaska 2002).

to nuisance law for this proposition.[20]  A nuisance caused by an abatable condition constitutes a temporary nuisance and "gives rise to a new cause of action with each invasion or injury."[21]  But this analogy fails because Sarah has not alleged a new statutory invasion or injury in the form of a new domestic violence incident.  Instead, she argues that she is still in fear of Sean based on the domestic violence that formed the factual basis of her earlier domestic violence protective order.  Res judicata bars her most recent action.

Sarah also argues that *McComas v. Kirn*[22] supports allowing a new petition for a protective order.  In *McComas* the superior court issued an ex parte protective order but then declined to issue a long-term protective order, instead opting to include a no-contact order in the parties' divorce decree.[23]  Later, when the respondent was scheduled to be released from custody, the petitioner again petitioned for ex parte and long-term protective orders, which the court granted.[24]  On appeal we held that res judicata did not bar issuing the long-term protective order because the end of the respondent's incarceration constituted a change in circumstances.[25]

But the superior court in *McComas* never granted the original petition for a long-term protective order, nor did it deny the petition because it found no incidents of domestic violence.  It instead exercised its discretion in issuing a different remedy,

---

[20]  *See id.*

[21]  *Id.* (citing *Beatty v. Wash. Metro. Area Transit Auth.*, 860 F.2d 1117, 1122 (D.C. Cir. 1988)).

[22]  105 P.3d 1130 (Alaska 2005).

[23]  *Id.* at 1131, 1135.

[24]  *Id.* at 1131-32.

[25]  *Id.* at 1135-36.

discretion that AS 18.66.100 gives the court.[26]  When circumstances changed, the court was free to again exercise its discretion and grant the protective order.  In this case, the superior court did grant a protective order.  The court may only grant another protective order if there is a new claim in the form of a new domestic violence incident.  A change in circumstances may establish a new claim for res judicata purposes,[27] but under AS 18.66.100 a claim for a protective order requires a new incident of domestic violence to obtain a subsequent protective order.[28]

Because Sarah had already received a judgment on her claim for a domestic violence protective order, res judicata prevents her from obtaining another protective order based on the same conduct that gave rise to the first protective order.[29]

---

[26]     *See* AS 18.66.100(b) ("[T]he court *may* order any relief available under (c) of this section." (emphasis added)).

[27]     *See Jackinsky v. Jackinsky*, 894 P.2d 650, 656 (Alaska 1995) ("Res judicata does not act as a bar when the conduct giving rise to the later suit post-dates the conclusion of the first suit." (citing RESTATEMENT (SECOND) OF JUDGMENTS § 24 cmt. f (Am. Law Inst. 1982))).

[28]     In *McComas* we noted that "[t]he . . . no-contact order was apparently insufficient to deter McComas from contacting Kirn" because he repeatedly violated it. *McComas*, 105 P.3d at 1136.  A violation of the terms of a domestic violence protective order is itself a crime involving domestic violence, *see* AS 18.66.990(3)(G), which allows for a petition for a new protective order.

[29]     This case concerns only the claim-preclusive effect of a domestic violence protective order in a second proceeding on a petition for a domestic violence protective order involving the same parties.  It does not concern any principles of issue preclusion, *see Harris v. Governale*, 311 P.3d 1052, 1057 (Alaska 2013) ("It was within the court's discretion to decline to give the protective order collateral estoppel effect . . . ."), nor does it concern the claim-preclusive effect of a domestic violence protective order proceeding on other types of proceedings, *cf.* AS 18.66.130(e) ("A protective order issued under this chapter is in addition to and not in place of any other civil or criminal

(continued...)

## 2. The statute does not allow for multiple protective orders.

Sarah argues that AS 18.66.100 allows courts to grant additional protective orders even if there has been no new incident of domestic violence. We disagree.

The statute sets out the full framework for protective orders, and it does not provide for the issuance of additional protective orders. Rather, the language of the statute unambiguously provides for the duration of the various kinds of protective relief that can be ordered. The protective relief under AS 18.66.100(c)(1) has an indefinite time limitation; this relief remains "effective until further order of the court."[30] Relief under the other subsections of AS 18.66.100(c) is expressly limited to "one year unless earlier dissolved by court order."[31]

This one-year limit was enacted in 2004, replacing the previous limit of six months provided in the Domestic Violence Prevention and Victim Protection Act of 1996.[32] The 1996 Act replaced former AS 25.35.010, which provided for a 90-day

---

[29](...continued)
remedy.").

Sarah alternatively argues that the superior court should have issued a no-contact order under its inherent equitable power. *See Wee v. Eggener*, 225 P.3d 1120, 1126-28 (Alaska 2010). But Sarah did not ask for a no-contact order in superior court. We therefore review for plain error, *see Sharpe v. Sharpe*, 366 P.3d 66, 75 (Alaska 2016), and find none. "Plain error 'exists where an obvious mistake has been made which creates a high likelihood that injustice has resulted.' " *Id.* at 75 n.65 (quoting *David S. v. State, Dep't of Health & Soc. Servs.*, 270 P.3d 767, 774 (Alaska 2012)). Whether to issue a no contact order is a heavily fact dependant question, and the superior court has broad discretion. *See Wee*, 225 P.3d at 1124. We cannot conclude the court plainly erred.

[30]     AS 18.66.100(b)(1).

[31]     AS 18.66.100(b)(2).

[32]     Ch. 124, § 23, SLA 2004; ch. 64, § 33, SLA 1996.

protective order that could be extended for another 45 days.[33]  In enacting the Domestic Violence Prevention and Victim Protection Act of 1996 the legislature chose to replace a statute that included an express extension provision with a statute that did not include any similar provision but provided specific time limits.  Those specific time limits were expanded by the 2004 legislation.  If the legislature intended to allow for multiple protective orders from the same incident of domestic violence, it did not say so in the statute.[34]

Sarah argues that AS 18.66.100(e), combined with the purpose of the statute, suggest that the legislature intended to allow for multiple protective orders. Alaska Statute 18.66.100(e) provides, "A court may not deny a petition for a protective order under this section solely because of a lapse of time between an act of domestic violence and the filing of the petition."  But the superior court in this case did not deny the protective order because of any lapse of time between the acts of domestic violence and the filing of the petition; it denied the order because it had already issued an earlier order addressing those same acts of domestic violence.  Alaska Statute 18.66.100(e), therefore, does not apply.  It is true that "[t]he purpose of [AS 18.66.100] is self-evident

---

[33]     Former AS 25.35.010(c), *repealed by* ch. 64, § 33, SLA 1996.

[34]     The one-year limit and lack of a renewal procedure in AS 18.66.100 distinguish this case from *Muma v. Muma*, 60 P.3d 592 (Wash. App. 2002).  In *Muma* the Washington Court of Appeals concluded that res judicata did not prevent an additional protective order because "the domestic violence issues . . . ha[d] not been fully litigated to their finality."  *Id.* at 595.  But under Washington's domestic violence protective order statute, "the court may either grant relief for a fixed time period or enter a permanent order of protection."  Wash. Rev. Code Ann. § 26.50.060(2) (West 2017). "If the court grants an order for a fixed period, the petitioner may apply for renewal of the order . . . at any time within three months before the order expires," and "[t]he court shall grant the petition for renewal unless the respondent proves by a preponderance of the evidence that the respondent will not resume acts of domestic violence."  *Id.* § 26.50.060(3).

— to protect victims of domestic violence."[35]  But we will not rewrite a statute to promote that statute's purpose.[36]  Here the legislature set forth a detailed framework for protecting victims of domestic violence, and it is the legislature's prerogative to make any policy changes to the statute.

Amici argue that discussion in senate committees about the 2004 change in duration of protective orders from six months to one year shows that the legislature believed petitioners could renew orders.  Both senators and witnesses expressed the view that the change from six months to one year would reduce the number of renewal hearings, thus increasing judicial efficiency and avoiding the need for the parties to be together as often.[37]  But a victim may apply for additional protective orders if there has been a new incident of domestic violence, and any violation of a domestic violence order itself constitutes a new incident of domestic violence.[38]  One senator noted that in most instances only one protective order will ever be issued and characterized hearings for additional protective orders as occurring when there were "still . . . problems in the relationship."[39]  This understanding is consistent with allowing additional orders only

---

[35]     *MacDonald v. State*, 997 P.2d 1187, 1189 (Alaska App. 2000).

[36]     *See State, Dep't of Commerce, Cmty. & Econ. Dev., Div. of Ins. v. Alyeska Pipeline Serv. Co.*, 262 P.3d 593, 597-98 (Alaska 2011).

[37]     *See* Minutes, Sen. Judiciary Comm. Hearing on S.B. 308, 23rd Leg., 2d Sess. 21 (Mar. 26, 2004) (comments of Sen. Hollis French); Minutes, Sen. State Affairs Comm. Hearing on S.B. 308, 23rd Leg., 2d Sess. 13-17 (Mar. 11, 2004) (comments of Sen. Hollis French and Sen. Gretchen Guess and testimony of Lauree Huganon, Alaska Network on Domestic Violence and Sexual Assault).

[38]     *See* AS 18.66.990(3)(G).

[39]     Minutes, Sen. State Affairs Comm. Hearing on S.B. 308, 23rd Leg., 2d Sess. 16 (Mar. 11, 2004) (comments of Sen. Hollis French).

when the prior order has been violated or when a new incident of domestic violence has occurred. Even if amici are correct that the legislature believed in 2004 that domestic violence victims could receive a new protective order without showing a new incident of domestic violence, we will not rewrite the law to conform to a mistaken view of the law that the legislature had when it amended the statute.[40]

It is the legislature's role to establish Alaska's policy with respect to domestic violence protective orders, including the time limits for protective orders and the availability of extension or renewal. Here the legislature enacted an unambiguous statute with a clear time limit — originally six months then later one year — and it did so while replacing a statute that permitted an extension. It is not the court's role or prerogative to modify the legislature's policy decision. "[W]e will not invade the legislature's province by extending the plain language of" AS 18.66.100 to allow for renewal of protective orders.[41] Sarah's "remedy lies with the legislature."[42]

## B.    The Second-Degree Criminal Trespass Statute

Although Sarah cannot renew or extend her previous domestic violence protective order, she would be eligible to receive a new protective order if she were able to prove that Sean committed a new incident of domestic violence. Sarah appeals the superior court's determination that Sean did not commit second-degree criminal trespass,

---

[40]     *State, Dep't of Revenue, Child Support Enf't Div. ex rel Gause v. Gause*, 967 P.2d 599, 602-03 (Alaska 1998) (citing *City of Fairbanks v. Schaible*, 375 P.2d 201, 209 (Alaska 1962), *overruled on other grounds by Scheele v. City of Anchorage*, 385 P.2d 582 (Alaska 1963)).

[41]     *Alyeska Pipeline Serv. Co.*, 262 P.3d at 598.

[42]     *Id.*

a domestic-violence crime.[43]  "A person commits the crime of criminal trespass in the second degree if the person enters or remains unlawfully . . . in or upon premises."[44]

Sarah and Sean both testified that Sean entered the garage at a house Sarah owned and took a box of his things.  Sean testified that he had received an email from Sarah telling him that his "belongings were underneath a blue tarp in the front yard and [he] could go by and get them."  When he got to the house, there was nothing under the tarp.  He thought that maybe she had placed his belongings in the backyard because the weather had been bad recently.  He went into the backyard, and the back door to the garage was open.  He took the box of his belongings and left.  Sarah's testimony contradicted only Sean's claim that the back door was open:  Sarah testified that she left the back door closed and locked.  The court credited Sean's testimony that the door was not locked.[45]

Based on this testimony the superior court ruled that as a matter of law Sean had not committed criminal trespass in the second degree.  The court explained:

> In order to have [criminal trespass in the second degree], you've got to enter [or] remain unlawfully . . . upon premises. . . .  And I believe [Sean's] testimony that [Sarah] — and she didn't contradict this — that she invited him onto the premises by email to get his stuff under a tarp — of course, it didn't happen to be under the tarp.  It happened to be in the open door garage.  He was invited to enter upon

---

[43]     *See* AS 18.66.990(3)(C).

[44]     AS 11.46.330(a)(1).

[45]     To the extent the superior court resolved this factual dispute in Sean's favor, we find no clear error.  Findings of fact that rely on the testimony of witnesses are reviewed with particular deference:  "the trial court, not this court, judges the credibility of witnesses and weighs conflicting evidence."  *Norris v. Norris*, 345 P.3d 924, 928 (Alaska 2015) (quoting *Limeres v. Limeres*, 320 P.3d 291, 296 (Alaska 2014)).

the premises to get his personal property. It wasn't unlawful because he was invited. It's not [second-degree] criminal trespass.

On appeal Sarah challenges the superior court's interpretation of the statutory language, arguing that the court should have considered the scope of Sean's permission to be on Sarah's premises, citing to cases on the tort of trespass.[46] But criminal trespass is a creature of statute and not the common law of torts.[47] And there is case law that supports the court's conclusion that Sean did not commit second-degree criminal trespass because Sarah gave him permission to enter her premises, even though the permission arguably was limited.[48] Sarah does not discuss the statutory definitions of "enter or remain unlawfully" or "premises," nor does she discuss prior cases

---

[46] *See, e.g.*, *Matanuska Elec. Ass'n v. Weissler*, 723 P.2d 600, 605-06 (Alaska 1986); *see also* RESTATEMENT (SECOND) OF TORTS § 169 (Am. Law Inst. 1965) ("A consent given by a possessor of land to the actor's presence on a part of the land does not create a privilege to enter or remain on any other part."); *id.* § 169 cmt. b ("If the possessor's consent is restricted as stated in this Section, the actor's presence on the land outside of the permitted area, unless it is otherwise privileged, is a trespass for which he is liable to the possessor and which deprives him of the rights which as licensee he has against the possessor.").

[47] *See* AS 11.46.330(a) (defining "criminal trespass in the second degree"); AS 11.46.350(a) (defining "enter or remain unlawfully"); AS 11.81.900(b)(50) (defining "premises"). *Turney v. State*, 922 P.2d 283, 285-90 (Alaska App. 1996).

[48] In *Arabie v. State*, 699 P.2d 890 (Alaska App. 1985), the court of appeals considered the similar second-degree burglary statute: "[a] person commits the crime of burglary in the second degree if the person enters or remains unlawfully in a building with intent to commit a crime in the building." AS 11.46.310(a). The court ruled that the defendant who entered a walk-in cooler at a liquor store by a back door did not "enter or remain unlawfully in a building" because the liquor store was open at the time. *Arabie*, 699 P.2d at 892-93. That the cooler itself was not open to the public did not matter because it was all one building. *Id.* at 892.

interpreting the second-degree criminal trespass statute or related statutes.[49] "Failure to develop an argument constitutes a waiver of that argument, and the argument will be considered abandoned."[50] We decline to import tort law principles into this criminal statute absent more thorough briefing and consider the issue waived.

## V.    CONCLUSION

We AFFIRM the superior court's denial of the petition for a long-term protective order.

---

[49]    *See supra* notes 47-48.

[50]    *Wright v. Anding*, 390 P.3d 1162, 1175 (Alaska 2017) (citing *Shearer v. Mundt*, 36 P.3d 1196, 1199 (Alaska 2001)).

MAASSEN, Justice, with whom WINFREE, Justice, joins, dissenting in part.

I dissent from part IV.A of today's opinion. I would hold that if a court finds that the petitioner still needs protection following the expiration of a long-term domestic violence protective order, neither the governing statute nor the doctrine of res judicata precludes the court from issuing a second order based on the same "crime involving domestic violence."

First, I disagree with the court's interpretation of AS 18.66.100. The court writes that "[i]f the legislature intended to allow for multiple protective orders from the same incident of domestic violence, it did not say so in the statute,"[1] but the inverse is also true: The legislature did not say it intended to *prohibit* "multiple protective orders from the same incident of domestic violence," which it could easily have done had it intended that result. The court finds oblique support for its holding in the directive of AS 18.66.100(b)(2) that most provisions of a long-term protective order "are effective for one year unless earlier dissolved by court order." But that directive simply assures that there will be a new judicial review of an order's most intrusive terms before they are extended or reimposed. Long-term protective orders may contain a number of provisions that restrict some ordinary concomitants of daily living: seeing one's children,[2] communicating with family members,[3] visiting particular neighborhoods,[4] or using

---

[1]     Op. at 11.

[2]     *See* AS 18.66.100(c)(9) (authorizing court to "award temporary custody of a minor child to the petitioner and . . . arrange for visitation").

[3]     *See* AS 18.66.100(c)(2) (authorizing court to "prohibit the respondent from telephoning, contacting, or otherwise communicating directly or indirectly with the petitioner").

[4]     *See* AS 18.66.100(c)(4) (authorizing court to "direct the respondent to stay
(continued...)

firearms.[5]  It is not unreasonable to require a petitioner to return to court to justify the continuation of such extraordinary restrictions if, after a year has passed, she still requires protection.[6]

Second, I believe that the court is mistaken in its application of the res judicata doctrine.  As the court observes, res judicata "prevents a party from suing on a claim which has been previously litigated to a final judgment by that party."[7]  The court describes a petitioner's claim for a domestic violence protective order as having a single element — the respondent's commission of a crime involving domestic violence against the petitioner — and concludes that once that element has been established on a petition, the claim is extinguished.[8]  But finding that a crime of domestic violence was committed is only the first of two steps in a trial court's analysis of the petition; having made that finding of fact, the court has discretion whether to grant the protective order.[9]  The

---

[4](...continued)
away from the residence, school, or place of employment of the petitioner or any specified place frequented by the petitioner or any designated household member").

[5]     *See* AS 18.66.100(c)(6), (7) (authorizing court under certain circumstances to order respondent to surrender firearms and to prohibit respondent from using or possessing deadly weapons).

[6]     In contrast, a long-term protective order's prohibition on "threatening to commit or committing domestic violence, stalking, or harassment" — which is "effective until further order of the court" and thus potentially indefinitely — does not require periodic judicial review because it applies to all members of society regardless. AS 18.66.100(b)(1), (c)(1).

[7]     Op. at 7 (quoting *Girdwood Mining Co. v. Comsult LLC*, 329 P.3d 194, 200 (Alaska 2014)); *see also McElroy v. Kennedy*, 74 P.3d 903, 906 (Alaska 2003).

[8]     Op. at 7-8.

[9]     *See Cooper v. Cooper*, 144 P.3d 451, 454 (Alaska 2006) ("We review the
(continued...)

touchstone of the court's exercise of discretion is implicit in the title of the order sought: It is a "protective order," intended not only to acknowledge a past bad act on the part of the respondent but also, and primarily, to protect the petitioner from future harm.[10] Today's opinion necessarily recognizes this.[11] And whether the petitioner requires continuing protection from future harm does not depend on whether the act of domestic violence is new[12] or on whether it was raised and litigated before.

For res judicata purposes, a domestic violence petition is thus much different from, say, a claim for the tort of assault, in which the plaintiff is awarded compensation for a past wrong and then closes the books on it forever. A domestic violence petitioner is seeking ongoing protection, not compensation for a past wrong.

Assume, for example, that an act of domestic violence prompted the petitioner to seek a protective order in 2017. If an order was issued, it answered only the question whether the petitioner needed a protective order in 2017. It did not decide a claim which was not and could not have been raised yet: whether the petitioner will still need a protective order after the one-year term of the 2017 order expires. Because that

---

[9](...continued) decisions to deny a protective order and grant a mutual restraining order for abuse of discretion.").

[10]     *See* AS 18.66.100(c)(16) (providing that a long-term protective order may "order other relief the court determines *necessary to protect the petitioner or any household member*" (emphasis added)).

[11]     Op. at 11-12 ("It is true that '[t]he purpose of [AS 18.66.100] is self-evident — to protect victims of domestic violence.' " (alterations in original) (quoting *MacDonald v. State*, 997 P.2d 1187, 1189 (Alaska App. 2000)).

[12]     *See* AS 18.66.100(e) ("A court may not deny a petition for a protective order under this section solely because of a lapse of time between an act of domestic violence and the filing of the petition.").

claim was not and could not have been litigated in 2017, the doctrine of res judicata, by definition, cannot apply.[13] The passage of time since the act of domestic violence occurred and the respondent's good behavior in the meantime are certainly relevant to whether the petitioner continues to need protection, but they are in no way dispositive.[14]

The court today distinguishes our decision in *McComas v. Kirn*[15] as involving a change in circumstances that allowed the granting of a second petition for a long-term protective order after the first petition had been denied.[16] I agree that *McComas* is distinguishable. But *McComas*'s factual context highlights the problems with today's restrictive interpretation of the protections available to those who legitimately fear domestic violence. The respondent in *McComas* was in prison at the time the parties were divorced, and we cited that fact as support for the initial denial of the petition: "McComas was incarcerated and did not constitute a threat."[17] But suppose the first petition had been granted and McComas got out of prison a year later. Under

_____

[13] *See Patterson v. Infinity Ins. Co.*, 303 P.3d 493, 497 (Alaska 2013) ("[A] fundamental tenet of the res judicata doctrine is that it precludes relitigation between the same parties not only of claims that were raised in the initial proceeding, but also of those relevant claims that could have been raised then." (quoting *Calhoun v. Greening*, 636 P.2d 69, 72 (Alaska 1981) (alteration in original))).

[14] Issue preclusion may apply in this context, but not in the way the court today holds. Collateral estoppel may (but does not necessarily) establish the statutory predicate for the second petition: "that the respondent has committed a crime involving domestic violence against the petitioner." AS 18.66.100(a). *See, e.g.*, *Andrea C. v. Marcus K.*, 355 P.3d 521, 527 (Alaska 2015) ("[T]he superior court retains discretion regarding when it will apply the doctrine" of collateral estoppel to a prior finding that a crime of domestic violence had been committed.).

[15] 105 P.3d 1130 (Alaska 2005).

[16] Op. at 8-10.

[17] *McComas*, 105 P.3d at 1135-36 (quoting appellee's argument).

today's opinion, the fact that the petitioner's fear is now real and immediate will not alone support a new protective order; she must await a new incident of domestic violence.

Such a result is anathema to the purpose of domestic violence protective orders, and AS 18.66.100 does not require it.  I would therefore reverse the superior court's decision on this issue.