*Notice: This opinion is subject to correction before publication in the PACIFIC REPORTER. Readers are requested to bring errors to the attention of the Clerk of the Appellate Courts, 303 K Street, Anchorage, Alaska 99501, phone (907) 264-0608, fax (907) 264-0878, email corrections@akcourts.gov.*

THE SUPREME COURT OF THE STATE OF ALASKA

| | |
|---|---|
| STEVEN WILLIAM ENG, ) | |
| ) | Supreme Court No. S-18257 |
| Appellant, ) | |
| ) | Superior Court No. 3AN-20-06070 CI |
| v. ) | |
| ) | O P I N I O N |
| STATE OF ALASKA, ALASKA ) | |
| DEPARTMENT OF PUBLIC ) | No. 7729 – October 25, 2024 |
| SAFETY, ) | |
| ) | |
| Appellee. ) | |
| ) | |

Appeal from the Superior Court of the State of Alaska, Third Judicial District, Anchorage, Josie Garton, Judge.

Appearances: Andrew J. Fierro, Law Office of Andrew J. Fierro, Inc., Eagle River, for Appellant. Ryan A. Schmidt and David A. Wilkinson, Assistant Attorneys General, Anchorage, and Treg R. Taylor, Attorney General, Juneau, for Appellee.

Before: Maassen, Chief Justice, Carney, Borghesan, and Pate, Justices, and Winfree, Senior Justice.* [Henderson, Justice, not participating.]

CARNEY, Justice.
BORGHESAN, Justice, with whom PATE, Justice, joins concurring.

---

*       Sitting by assignment made under article IV, section 11 of the Alaska Constitution and Alaska Administrative Rule 23(a).

## I.    INTRODUCTION

After a man was unable to buy a gun because a background check revealed he was subject to a long-term domestic violence protective order, the man sued the State. He claimed that he was no longer subject to a protective order as defined by federal statute, and sought a permanent injunction and declaratory judgment that the Department of Public Safety (DPS) notify a national database that he was no longer subject to a protective order under 18 U.S.C. § 922(g)(8). He then filed a motion for summary judgment; the State opposed and filed a cross-motion for summary judgment. The superior court granted the State's cross-motion. The man appeals. We affirm the superior court's decision.

## II.    FACTS AND PROCEEDINGS

### A.    Facts

In 2013 Steven Eng's ex-wife petitioned for a long-term domestic violence protective order (DVPO) against him. Eng received notice of the petition and participated in a contested hearing. The superior court granted the petition. The court found by a preponderance of the evidence that Eng committed or attempted to commit assault or reckless endangerment against his ex-wife. The court also found that Eng "represents a credible threat to the physical safety of petitioner," citing 18 U.S.C. § 922(g)(8)(C)(i) of the Brady Act.[1] Finally, the court found that Eng was in possession of a firearm during the commission of domestic violence, citing AS 18.66.100(c) subsections (6) and (7).

---

[1]    The Brady Handgun Violence Protection Act established a national instant criminal background check system (NICS), which prohibits the sale of firearms to people subject to DVPOs as defined by 18 U.S.C. § 922(g)(8). *See* 18 U.S.C. §§ 921-922.

The court issued a DVPO pursuant to AS 18.66.100.[2] The DVPO prohibited Eng from committing or threatening to commit acts of domestic violence, stalking, or harassment pursuant to subsection (c)(1).[3] This general prohibition was to "remain in effect indefinitely, until dissolved by court order." The DVPO also required Eng to only contact his ex-wife through her attorney, to stay away from her residence and workplace, and not to interfere with her operation of any vehicle, as authorized by subsections (c)(2) through (5) and (16). Citing subsections (6) and (7) of the statute, the DVPO prohibited Eng from using or possessing a firearm and ordered him to "surrender every firearm" he owned and possessed. The more specific provisions, including the prohibition on using or possessing a firearm, remained in effect for one year and expired in November 2014. A section of the order entitled "Notice to Respondent" warned that even if other sections of the DVPO "do not prohibit you from possessing" a firearm or ammunition, "you may be charged with a federal offense" for such possession. The notice section cited 18 U.S.C. § 922(g).

After receiving a copy of the DVPO from the court, DPS entered it into the National Crime Information Center (NCIC) database as required by AS 18.65.540.[4]

---

[2] Alaska Statute 18.66.100 governs DVPOs, providing "victim[s] of a crime involving domestic violence" the opportunity to petition for "a protective order against a household member."

[3] AS 18.66.100(c)(1) (stating DVPOs may "prohibit the respondent from threatening to commit or committing domestic violence, stalking, or harassment").

[4] *See* AS 12.62.110(4) (requiring DPS commissioner to "cooperate with . . . the National Crime Information Center, and other appropriate agencies or systems, in the development and operation of an effective interstate, national, and international system of criminal identification, records, and statistics"); *see also* AS 18.65.540(a) (requiring DPS to "maintain a central registry of protective orders issued by or filed with a court of this state").

DPS determined that the DVPO qualified for inclusion in the database authorized in the enabling regulations that accompanied the Brady Act.[5]

At some point in late 2014 or 2015, after all provisions of the order except the one prohibiting further acts of domestic violence had expired, the DVPO was uploaded from the Alaska Public Safety Information Network to the NCIC database.[6] It was entered with a specific code that indicated Eng was prohibited from possessing a firearm or ammunition because the section of the DVPO remaining in effect "until further order of the court" qualified as an order under § 922(g)(8).

In 2019 Eng attempted to buy a gun. He completed a firearms transaction record for the firearms dealer to complete a background check as required by federal law.[7] The Bureau of Alcohol, Tobacco, Firearms, and Explosives denied approval for

---

[5] *See* 34 U.S.C. § 40901(b)(1) (directing Attorney General to "establish a national instant criminal background check system that any [federal firearms dealer] may contact . . . for information, to be supplied immediately, on whether receipt of a firearm by a prospective [buyer] would violate section 922 of Title 18 or state law"); 28 C.F.R. §§ 25.1, 25.3, 25.4 ("establish[ing] a National Instant Criminal Background Check System (NICS)" to "implement[] the Brady . . . Act," which would include information from two other databases — the National Crime Information Center (NCIC) and the Interstate Identification Index (III) — "contributed voluntarily by Federal, state, local, and international criminal justice agencies"); *see also* AS 12.62.110(4) (requiring DPS commissioner "to cooperate with . . . [other] criminal record repositories," including "the Interstate Identification Index, the National Law Enforcement Telecommunications System, the [NCIC], and other appropriate agencies or systems, in the development and operation of an effective interstate, national, and international system of criminal identification, records, and statistics").

[6] The Alaska Public Safety Information Network tracks criminal histories and other information necessary for law enforcement purposes, including DVPOs; the network connects to other federal and state networks via the National Law Enforcement Telecommunications System. *See Division of Statewide Services*, ALASKA DEP'T PUB. SAFETY, https://dps.alaska.gov/Statewide/Home (last visited Oct. 10, 2024).

[7] When a person attempts to purchase a firearm, a federally licensed dealer must contact NICS to perform a background check on the buyer to verify eligibility.

the purchase. Eng unsuccessfully contested the denial with the Federal Bureau of Investigation (FBI). In July 2019 he received a letter from the FBI upholding the denial and informing him that he was prohibited from purchasing firearms under Section 922(g)(8) because he was "[a] person who is subject to a court order."

In March 2020 Eng's attorney sent a letter to DPS regarding the denial; DPS sent a letter in response advising him to request that the superior court dissolve the order and directing him to a specific court form designed for that purpose. The Department of Law reiterated the same advice in an email in April 2020. Eng did not attempt to modify or dissolve the DVPO.

### B. Proceedings

In April 2020 Eng filed a complaint for injunctive and declaratory relief in superior court. Eng sought an order that DPS notify NCIC that he was no longer subject to a protective order under 18 U.S.C. § 922(g)(8). The State moved to dismiss Eng's complaint with prejudice.

Eng filed a motion for summary judgment, arguing that the DVPO was "contrary to federal case law and [was] not supported by Alaska law or procedure" because it was indefinite. The State opposed and filed a cross-motion for summary judgment.

The superior court held oral argument in April 2021. Eng argued that "after one year [the DVPO] is no longer a protective order" and that the State violated his rights under the Second Amendment of the United States Constitution by "prevent[ing] him from purchasing and actually possessing a firearm." The State responded that the superior court had found Eng posed a credible threat to his ex-wife and was either in possession of or used a firearm during the commission of domestic

---

*Firearms Checks (NICS)*, FED. BUREAU INV., https://www.fbi.gov/how-we-can-help-you/more-fbi-services-and-information/nics (last visited Oct. 10, 2024).

violence that led to the DVPO. It also emphasized that the DVPO remained in effect until further court order.

In August the court denied Eng's motion and granted the State's cross-motion for summary judgment. The court first found that the DVPO had not expired, and that it remained a qualifying order under Section 922(g)(8). It then concluded that Eng's constitutional claims were not ripe. The court also concluded that Eng's claim that he would not be able to seek modification of the DVPO was not ripe "[b]ecause Eng ha[d] not initiated modification or dissolution of his order." The court entered a final judgment in favor of the State in November. Eng appeals.

## III. STANDARD OF REVIEW

We review whether a claim is ripe and whether summary judgment was proper using our independent judgment.[8] "Summary judgment is proper if there is no genuine factual dispute and the moving party is entitled to judgment as a matter of law."[9] "All reasonable inferences to be drawn from the facts presented must be drawn in favor of the non-moving party."[10]

## IV. DISCUSSION

Eng argues that the legislature intended long term DVPOs to expire, that the DVPO is not a qualifying protective order under 18 U.S.C. § 922(g)(8), and that the superior court erred by finding his remaining claims not ripe for adjudication. We disagree: the legislative history does not support Eng's interpretation of AS 18.66.100, the DVPO qualifies under Section 922(g)(8), and Eng's remaining claims are not ripe.

---

[8]    *Anderson v. Alaska Hous. Fin. Corp.*, 462 P.3d 19, 25 (Alaska 2020) (quoting *Blair v. Fed. Ins. Co.*, 433 P.3d 1048, 1051 (Alaska 2018)); *State v. ACLU of Alaska*, 204 P.3d 364, 367-68 (Alaska 2009).

[9]    *Mitchell v. Teck Cominco Alaska Inc.*, 193 P.3d 751, 757 (Alaska 2008).

[10]    *Id.* at 758.

## A. The DVPO Remains In Effect.

Eng argues that the legislative history of AS 18.66.100 "does not support the superior court's conclusion that protective orders in Alaska are of indefinite duration."

When analyzing a statute, "[w]e begin with the text and its plain meaning, and we use a sliding-scale approach to interpret the language. [T]he plainer the statutory language is, the more convincing the evidence of contrary legislative purpose or intent must be."[11]

### 1. Plain meaning.

When we consider statutory language, "unless words have acquired a peculiar meaning, by virtue of statutory definition or judicial construction, they are to be construed in accordance with their common usage."[12] "[W]e presume that no words or provisions are superfluous and that the legislature intended 'every word, sentence, or provision of a statute to have some purpose, force, and effect.' "[13]

Alaska Statute 18.66.100(c) states that "[a] protective order under this section may . . . prohibit the respondent from threatening to commit or committing domestic violence, stalking, or harassment."[14] Alaska Statute 18.66.100(b) provides that "[t]he provisions of a protective order issued under . . . (c)(1) of this section are

---

[11] *Res. Dev. Council for Alaska, Inc. v. Vote Yes for Alaska's Fair Share*, 494 P.3d 541, 546 (Alaska 2021) (second alteration in original) (quoting *State v. Planned Parenthood of the Great Nw.*, 436 P.3d 984, 992 (Alaska 2019)).

[12] *Tesoro Alaska Petrol. Co. v. Kenai Pipe Line Co.*, 746 P.2d 896, 905 (Alaska 1987).

[13] *Adamson v. Mun. of Anchorage*, 333 P.3d 5, 16 (Alaska 2014) (quoting *Monzulla v. Voorhees Concrete Cutting*, 254 P.3d 341, 345 (Alaska 2011)).

[14] AS 18.66.100(c)(1).

effective until further order of the court" while those issued under subsections (c)(2)-(16) "are effective for one year unless earlier dissolved by court order."[15]

This language is not ambiguous. In *Whalen v. Whalen* we discussed the legislative history of AS 18.66.100.[16] We recognized that "the language of the statute unambiguously provides for the duration of the various kinds of protective relief that can be ordered."[17] We emphasized that protective relief ordered under AS 18.66.100(c)(1) has an "indefinite time limitation" and remains "effective until further order of the court."[18] DVPOs issued under AS 18.66.100(c)(1), according to its terms, "are effective until further order of the court."

When a statute's meaning appears clear and unambiguous, "the party asserting a different meaning bears a correspondingly heavy burden of demonstrating contrary legislative intent."[19] With this burden in mind, we turn to the legislative history of AS 18.66.100.

### 2. Legislative history.

Alaska Statute 18.66.100 is part of the 1996 Domestic Violence Prevention and Victim Protection Act,[20] which changed the protective order provisions in former AS 25.35.010.[21] The initial version of the act was replaced by a committee

---

[15]     AS 18.66.100(b).

[16]     425 P.3d 150, 154 (Alaska 2018).

[17]     *Id.* at 155.

[18]     *Id.*

[19]     *State v. Planned Parenthood of the Great Nw.*, 436 P.3d 984, 992 (Alaska 2019) (quoting *State v. Fyfe*, 370 P.3d 1092, 1095 (Alaska 2016)).

[20]     Ch. 64, § 33, SLA 1996.

[21]     Former AS 25.35.010(c) (1995) (stating that orders "remain[ed] in effect for a period of time not to exceed 90 days" and allowing extensions in certain circumstances).

substitute based on the Model Code on Domestic and Family Violence.[22] The Model Code did not include time limits on protective orders issued upon notice and hearing and "shift[ed] the burden from the victim to the perpetrator [to seek] court approval to terminate an order."[23] During hearings on the proposed bill, a Department of Law representative supported the proposed substitute because even without time limits on protective orders, it would be "very easy for people to get modifications to protective orders: all either party needs to do is ask the court for modifications."[24] Originally four of the sixteen provisions had no time limits,[25] but the bill was revised to include only one provision without a stated time limit.[26]

The Senate Finance Committee expanded the language of that remaining provision to include harassing and stalking.[27] It provided that a protective order under this section may "prohibit the respondent from threatening to commit or committing

---

[22] Minutes, H. Jud. Standing Comm. Hearing on H.B. 340, 19th Leg., 2d Sess. 1:30 (Apr. 15, 1996) (statement of Rep. Sean Parnell) ("The committee substitute is based, in part, on the Model Code on Domestic and Family Violence and is focus[e]d on victim protection and domestic violence prevention.").

[23] MODEL CODE ON DOMESTIC & FAMILY VIOLENCE § 306 cmt. (NAT'L COUNCIL OF JUV. & FAM. CT. JUDGES 1994) ("No time limitations are imposed."). The Model Code was developed by the National Council of Juvenile and Family Court Judges.

[24] Minutes, S. Jud. Comm. Hearing on H.B. 314, 19th Leg., 2d Sess. (Apr. 15, 1996) (comments of Laurie Otto, Deputy Att'y Gen.).

[25] Minutes, S. Jud. Comm. Hearing on H.B. 314, 19th Leg., 2d Sess. (Apr. 19, 1996) (comments of Richard Vitale).

[26] *See* AS 18.66.100(c)(1).

[27] Minutes, S. Fin. Comm. Hearing on H.B. 314, 19th Leg., 2d Sess. (May 5, 1996) (comments of Sen. Rick Halford, Co-Chair) (suggesting first provision "could be a perpetual order and include stalking and harassing").

domestic violence, stalking, or harassment."[28]  This provision became AS 18.66.100(c)(1), which is "effective until further order of the court."[29]

The legislative history reveals that the legislature intended DVPOs based on subsection (c)(1) to last "until further order of the court" — exactly what the plain language of the statute states.  Eng has failed to meet his "heavy burden of demonstrating contrary legislative intent."[30]  The DVPO against Eng remains in effect.

## B.    The DVPO Is A Qualifying Order Under 18 U.S.C. § 922(g)(8).

Eng argues that the continuing prohibition of acts of domestic violence, stalking, or harassment in the DVPO does not qualify as a protective order under 18 U.S.C. § 922(g)(8), in part because that section of the DVPO "is not directed to protect a specific person."

Section 922(g) prohibits the sale of firearms to someone subject to a protective order that:

> (A) was issued after a hearing of which such person received actual notice, and at which such person had an opportunity to participate;

---

[28]    S. Fin. Comm. Substitute for H.B. 314, 19th Leg., 2d Sess. (May 5, 1996).

[29]    AS 18.66.100(b)(1)-(c)(1).  The legislature amended the statutes governing the issuance of protective orders following *Whalen*; these changes expanded rather than limited protective orders.  Ch. 9, SLA 2019; Minutes, S. Jud. Comm. Hearing on H.B. 12, 31st Leg., 1st Reg. Sess. 6:01:06-6:02:55 (Apr. 23, 2019) (statement of Rep. Chuck Kopp) (explaining that bill is intended to clarify statutes in response to *Whalen*); *see also Mitchell v. Mitchell*, 445 P.3d 660, 662 (Alaska 2019) ("Among other things, the amendments prohibit a court from denying a petition for a protective order on grounds that (1) the alleged domestic violence was the basis for a previous protective order; or (2) the court previously found the petitioner to be a victim of domestic violence but did not order relief, if the petition alleges a change of circumstances.").

[30]    *State v. Planned Parenthood of the Great Nw.*, 436 P.3d 984, 992 (Alaska 2019) (quoting *State v. Fyfe*, 370 P.3d 1092, 1095 (Alaska 2016)).

(B) restrains such person from harassing, stalking, or threatening an intimate partner[31] of such person or child of such intimate partner or person, or engaging in other conduct that would place an intimate partner in reasonable fear of bodily injury to the partner or child; and

(C)(i) includes a finding that such person represents a credible threat to the physical safety of such intimate partner or child; or (ii) by its terms explicitly prohibits the use, attempted use, or threatened use of physical force against such intimate partner or child that would reasonably be expected to cause bodily injury. . . .[32]

It is clear from the record that Eng had notice and the opportunity to be heard — and was heard — at a hearing, that the DVPO was granted to his ex-wife, and that it included a finding that Eng represented a credible threat to the safety of his ex-wife. And it is undisputed that the DVPO was a qualifying order from 2013 until November 2014.

But Eng now claims that notice was insufficient because he "was not told by the court that [he] will remain indefinitely subject to the protective order" and therefore prevented from purchasing a gun from a licensed dealer. He argues that because the only continuing provision of the DVPO "is not directed to protect a specific person, notably a respondent's intimate partner," "what remains is not a qualifying protective order." Eng also argues that "it is unreasonable to conclude that respondents in Alaska remain a credible threat to a victim beyond the expiration of the no contact provisions."

---

[31]     As used in subsections 922(g)(8)(B) and (C), intimate partner is defined as "the spouse of the person, a former spouse of the person, an individual who is a parent of a child of the person, and an individual who cohabitates or has cohabited with the person." 18 U.S.C. § 921(a)(32).

[32]     18 U.S.C. § 922(g).

**1. Eng received notice and had an opportunity to participate at the hearing.**

Section 922(g)(8)(A) requires that the protective order is issued "after a hearing of which such person received actual notice, and at which such person had an opportunity to participate."[33] The DVPO was "issued after a hearing," Eng "received actual notice," and he "had an opportunity to participate." The statutory requirements were met. Eng's claim that he did not receive notice because he was "not told by the court that [he] will remain indefinitely subject to the protective order" fails as well. The DVPO plainly states that the prohibition against acts of domestic violence, stalking, or harassment "remain[s] in effect indefinitely, until dissolved by court order." In addition the DVPO gave notice to Eng that he "may be charged with a federal offense even if" he was not prohibited from "possess[ing] a firearm or ammunition while the order is in effect."

**2. The DVPO is directed to protect Eng's ex-wife and includes a finding that he represented a credible threat to her.**

To qualify as a protective order under 18 U.S.C. § 922(g)(8)(B), an order must "restrain[] such person from harassing, stalking, or threatening an intimate partner of such person or child of such intimate partner or person, or engaging in other conduct that would place an intimate partner in reasonable fear of bodily injury to the partner or child."[34] "[T]he spouse of the person [and] a former spouse of the person" are considered intimate partners.[35]

The DVPO was issued by the court based on the petition filed by Eng's ex-wife and the testimony presented at the contested petition hearing. The DVPO identifies Eng's ex-wife as the protected person and includes a finding that she and Eng

---

[33] 18 U.S.C. § 922(g)(8)(A).

[34] 18 U.S.C. § 922(g)(8)(B).

[35] 18 U.S.C. § 921(a)(32).

were married. But Eng argues that because the section of the DVPO that prohibits acts of domestic violence, stalking, or harassment does not include language specifying that he cannot commit these acts against his ex-wife, the remaining "prohibition [is] not specific to a particular victim." He cites a case from the United States Court of Appeals for the Ninth Circuit, *United States v. Sanchez*.[36]

Sanchez appealed a finding that he violated 18 U.S.C. § 922(g)(8) by knowingly possessing a gun while subject to a no-contact order.[37] He argued that the court erred by "denying his motion for acquittal" and that the no contact order did not "satisfy § 922(g)(8)'s requirement that the underlying court order 'by its terms explicitly prohibit[ ] the use, attempted use, or threatened use of physical force against such intimate partner or child that would reasonably be expected to cause bodily injury.' "[38] The Ninth Circuit agreed with him and held that the district court had erred "because a no-contact order that lacks explicit prohibitions on the use, attempted use, or threatened use of physical force against an intimate partner or child that would reasonably be expected to cause bodily injury cannot satisfy (8)(C)(ii)."[39] The Ninth Circuit held that "[a] court can ensure an order triggers § 922(g)(8) by including either a finding that the person subject to the court order represented a credible threat to the physical safety of an intimate partner or child or specific terms prohibiting the use, attempted use, or threatened use of physical force."[40]

Eng asserts that the failure to specify his ex-wife means that the DVPO does not meet the federal statute's requirements. He claims that "*Sanchez* clearly points

---

[36]     639 F.3d 1201 (9th Cir. 2011).

[37]     *Id.* at 1202-04.

[38]     *Id.* at 1202 (alteration in original).

[39]     *Id.* at 1205.

[40]     *Id.* at 1206.

out that the protective order must be directed to protect a respondent's intimate partner as stated in subsections B and C of 922(g)(8)."

We have previously noted that "[p]aragraphs (1)-(7) of AS 18.66.100(c) allow a protective order issued in response to a domestic violence petition to restrict the respondent's contact with *the petitioner*."[41] Eng's ex-wife was the petitioner, and she is an intimate partner; the order satisfies Section 922(g)(8)(B).

The superior court found that Eng represented a credible threat to his ex-wife. Section 922(g)(8)(C) is disjunctive: it requires either "a finding that such person represents a credible threat to the physical safety of such intimate partner or child; or [that the order] explicitly prohibits the use, attempted use, or threatened use of physical force against such intimate partner."[42] The no-contact order in *Sanchez* failed to satisfy section 922(g)(8)(C)(ii) because the order did not specifically prohibit the use, attempted use, or threatened use of physical force, *and* it did not include a finding that Sanchez represented a credible threat to an intimate partner or child.[43] The DVPO here included a finding that Eng represented a credible threat. *Sanchez* does not apply.

The DVPO remains a qualifying order under 18 U.S.C. § 922(g)(8).

## C. Eng's Remaining Arguments Are Not Ripe.

Eng makes a number of other arguments,[44] but none of them are ripe for adjudication because he has not attempted to dissolve or modify the DVPO.[45] The

---

[41]   *State v. Strane*, 61 P.3d 1284, 1286 (Alaska 2003) (emphasis added).

[42]   18 U.S.C. § 922(g)(8)(C).

[43]   639 F.3d at 1202-06.

[44]   Eng argues that the DVPO is not of limited duration, that he is not truly "subject to" a qualifying order, and that the procedure for modifying the DVPO is not clear.

[45]   The concurrence at page 18 asserts that this conclusion "seems inconsistent" with our resolution of Eng's argument that the DVPO did not qualify

concurrence disagrees, but to address one of these arguments, the concurrence extends to Eng the type of lenience usually reserved for self-represented parties.[46] Because Eng was zealously represented by counsel throughout this litigation, we decline to do likewise.

There must be an "actual controversy" for a court to issue declaratory relief under Alaska's declaratory judgment act.[47] The statute's "actual controversy" language "encompasses a number of more specific reasons for not deciding cases, including lack of standing, mootness, and lack of ripeness."[48] "The ripeness doctrine requires a plaintiff to claim that either a legal injury has been suffered or that one will be suffered in the future."[49] Our primary concern is "whether the case involves uncertain or contingent future events that may not occur as anticipated, or indeed may not occur at all."[50]

---

under the Brady Act because it was "not directed to protect a specific person." But that argument presents a straightforward question of statutory interpretation that does not depend on whether the order might be modified in the future.

In contrast, Eng has not attempted to dissolve or modify the DVPO but nonetheless argues that it is indefinite. Similar to parties held in civil contempt, Eng "carr[ies] the keys of [his] prison in [his] own pocket[]." *Carter v. Broderick*, 750 P.2d 843, 844 (Alaska 1988). Likewise "[i]t is well established that as to a party to a suit a civil contempt order is interlocutory and reviewable only upon appeal taken from a final judgment or decree." *Surina v. Buckalew*, 629 P.2d 969, 972 n.4 (Alaska 1981). Unless and until Eng attempts and fails to dissolve or modify the DVPO, his claim is not ripe.

[46] Concurrence at 17-18; *see Breck v. Ulmer*, 745 P.2d 66, 75 (Alaska 1987) ("[T]he pleadings of pro se litigants should be held to less stringent standards than those of lawyers.").

[47] *Borer v. Eyak Corp.*, 507 P.3d 49, 57-58 (Alaska 2022); AS 22.10.020(g).

[48] *Brause v. State, Dep't of Health & Soc. Servs.*, 21 P.3d 357, 358 (Alaska 2001).

[49] *Id.* at 359.

[50] *Id.* (quoting 13A CHARLES ALAN WRIGHT ET AL., FEDERAL PRACTICE & PROCEDURE § 3532, at 112 (2d ed. 1984)).

When Eng asked DPS to notify the FBI that he was no longer subject to a protective order, the agency informed him that a "Request to Dissolve a Protective Order[] must be filed with the court for relief from this firearms prohibition." Instead of seeking to modify the order, Eng sued DPS and then filed a motion for summary judgment. Because Eng has not attempted to dissolve the order, there is no actual controversy to decide, and his other arguments are not ripe.[51]

## V. CONCLUSION

We AFFIRM the superior court's decision.

---

[51] We do not issue advisory opinions. *See Dapo v. State, Dep't of Health & Soc. Servs., Off. of Child.'s Servs.*, 509 P.3d 376, 381 (Alaska 2022).

BORGHESAN, Justice, with whom PATE, Justice, joins concurring.

I agree with the court's ruling that the DVPO entered against Steven Eng remains in effect and is a qualifying order for purposes of 18 U.S.C. § 922(g)(8), which is part of the federal Brady Act.[1]  I write separately because I believe Eng has made a ripe argument that the court does not address.  His argument, as I understand it, is that protective orders of indefinite duration, like the one to which he remains subject, are not qualifying orders for purposes of the Brady Act.

To be fair, it is hard to know for certain what Eng is arguing.  He states that he "is not challenging the constitutionality of 922(g)(8)."  Instead he challenges "the actions of the state in identifying him as a person indefinitely 'subject to' a qualifying order under 922(g)(8) for purposes of invoking federal firearm restrictions."  Alaska law does not deprive Eng of the right to possess a firearm; it is § 922(g)(8) that does so.  Yet Eng's reply brief cites the United States Supreme Court's decision in *New York State Rifle & Pistol Ass'n v. Bruen*,[2] which was issued after the parties' opening briefs were filed.  This citation suggests that Eng, despite disclaiming a challenge to the constitutionality of § 922(g)(8), is making a constitutional argument of some sort.

Putting all this together, I take Eng to be arguing that the Brady Act has been or must be interpreted so that protective orders of indefinite duration are not "qualifying orders" that bar possession of firearms, lest the Brady Act violate the Second Amendment.  Whether this claim is based on statutory construction or an as-

---

[1]  Eng's arguments pertain to 18 U.S.C. § 922(g)(8).  Congress enacted § 922(g)(8) as part of the Violent Crime Control and Law Enforcement Act of 1994.  Pub. L. No. 103-322, § 110401(c), 108 Stat. 1796, 2014-15 (1994).  This federal statutory scheme is referred to here as the Brady Act for consistency with the court's decision.

[2]  597 U.S. 1 (2022).

applied constitutional challenge, it is ripe, and we should address it. I believe the argument fails under the Supreme Court's recent decision in *Rahimi v. United States*.[3]

### A. Both Of Eng's Arguments About The Brady Act Are Ripe For Decision.

Eng argues that the DVPO he is subject to does not qualify under § 922(g)(8) for two reasons. First, he argues that § 922(g)(8) applies to protective orders that restrain a "person from harassing, stalking, or threatening an intimate partner," while the only remaining DVPO provision in effect against him is a general prohibition not to threaten or commit acts of domestic violence, stalking, or harassment — against anyone. Second, he argues that "only protective orders of a limited duration trigger the 922(g)(8) firearm prohibition," while the DVPO to which he is subject has an indefinite duration, remaining in effect until dissolved by court order. The court addresses the first argument, and I agree with its analysis. But the court declines to address Eng's second argument for lack of ripeness.

That approach seems inconsistent. If the first argument is ripe — and I believe it is — the second argument is ripe too.

"Our ripeness doctrine aptly deals with the question of whether it is appropriate to render declaratory judgment based on hypothetical applications of the challenged law."[4] "[T]he central concern of ripeness 'is whether the case involves uncertain or contingent future events that may not occur as anticipated, or indeed may not occur at all.' "[5] As the court highlights, a claim is ripe where there is an "actual controversy"[6] based on a "legal injury" that does not involve "uncertain or contingent

---

[3]     144 S. Ct. 1889 (2024).

[4]     *Borer v. Eyak Corp.*, 507 P.3d 49, 57 (Alaska 2022).

[5]     *Brause v. State, Dep't of Health & Soc. Servs.*, 21 P.3d 357, 359 (Alaska 2001) (quoting 13A CHARLES ALAN WRIGHT, ARTHUR R. MILLER & EDWARD H. COOPER, FEDERAL PRACTICE AND PROCEDURE § 3532, at 112 (2d ed. 1984)).

[6]     *Borer*, 507 P.3d at 57-58; AS 22.10.020(g).

future events."[7] When an injury has already occurred, a claim for relief is necessarily ripe.

In addressing Eng's first argument why his protective order is not a qualifying order under the Brady Act, the court implicitly deems this claim ripe. That makes sense because, under the court's interpretation of the Brady Act, it is currently illegal for Eng to possess a firearm.[8] He is suffering an injury right now.[9]

Yet the court declines to address Eng's second statutory construction argument based on the same facts, seeking the same relief. The court suggests this argument is not ripe because Eng can seek to have the DVPO dissolved. But that point applies equally to his first statutory construction argument. And the court does not suggest additional facts need to be developed to decide whether a protective order of

---

[7] *Brause*, 21 P.3d at 359 (quoting 13A WRIGHT, MILLER & COOPER, *supra* note 5, § 3532, at 112).

[8] Under our decision in *State v. ACLU of Alaska*, the court could have conceivably concluded that none of Eng's claims are ripe unless and until he is arrested for possessing a firearm in violation of the Brady Act. 204 P.3d 364, 369 (Alaska 2009) (holding that a pre-enforcement challenge to state marijuana law was not ripe "because the activities that the plaintiffs wish[ed] to engage in [were] already criminal under federal law"). But unlike the plaintiffs in that case, Eng can credibly assert that he will forego conduct that he claims is lawful. *See id.* ("Where a statute criminalizes conduct, threats of enforcement will support a pre-enforcement challenge if the threats are real and actually force the plaintiff to choose between forgoing the behavior and facing penalties."). For that reason, I believe his claim is ripe.

[9] We have held that "Alaska's standing rules are liberal" and that "[u]nder the interest-injury approach, a plaintiff must have an interest adversely affected by the conduct complained of." *Bowers Off. Prods., Inc. v. Univ. of Alaska*, 755 P.2d 1095, 1097 (Alaska 1988) (quoting *Trs. for Alaska v. State, Dep't of Nat. Res.*, 736 P.2d 324, 327 (Alaska 1987)). "The degree of injury to the interest need not be great; '[t]he basic idea . . . is that an identifiable trifle is enough for standing to fight out a question of principle; the trifle is the basis for standing and the principle supplies the motivation.' " *Trs. for Alaska*, 736 P.2d at 327 (alterations in original) (internal quotation marks omitted) (quoting *Wagstaff v. Superior Ct., Fam. Ct. Div.*, 535 P.2d 1220, 1225 n.7 (Alaska 1975)).

indefinite duration is a qualifying order.[10] Contrary to the court's suggestion, the DVPO is of indefinite duration even though Eng has not yet tried to have it dissolved. It is precisely because it remains in effect until further order of the court that it is of indefinite duration.

I do not see a persuasive reason to deem one of Eng's statutory construction arguments ripe and the other unripe. Therefore I would address them both on the merits.

## B. Eng's Argument That DVPOs Of Indefinite Duration Are Not "Qualifying Orders" Under The Brady Act Fails.

Eng argues that the DVPO is not a "qualifying order" under the Brady Act because the order does not have a fixed duration. Neither the text of the Brady Act nor the cases Eng cites support his construction of the statute.

There is no textual basis for Eng's argument. The Brady Act prohibits the sale of firearms to a person subject to a protective order meeting certain criteria.[11] These criteria do not mention the duration of a protective order.[12]

Although Eng argues that some courts have construed the Brady Act so that only orders with fixed terms are qualifying, that is not accurate. Eng has not cited any cases holding that only protective orders with fixed terms are qualifying under the Act. Instead, the decisions he cites involved constitutional challenges to the Brady Act in which courts reasoned that the temporary duration of protective orders was a factor

---

[10] *See ACLU of Alaska*, 204 P.3d at 368 ("[P]ure legal questions that require little factual development are more likely to be ripe . . . ." (quoting *Alaska Right to Life Pol. Action Comm. v. Feldman*, 504 F.3d 840, 849 (9th Cir. 2007))).

[11] 18 U.S.C. § 922(g)(8).

[12] *Id.*

showing the Act was narrowly tailored to satisfy the Second Amendment.[13]  None of those decisions adopted the narrowing construction of the Brady Act that Eng proposes — that only protective orders of fixed duration are qualifying.  And those decisions are of limited relevance in the wake of the Supreme Court's decision in *New York State Rifle & Pistol Ass'n v. Bruen*, which rejected the intermediate-scrutiny test those decisions applied in favor of a historical analogy test.[14]

Eng appears to argue that the Second Amendment requires the Brady Act to be narrowly interpreted to exclude protective orders of indefinite duration, but this argument fails too.  The Supreme Court's recent decision in *United States v. Rahimi*[15] supports the conclusion that the Brady Act may constitutionally be interpreted to bar firearm possession by persons subject to a protective order of indefinite duration.

---

[13]  *United States v. McGinnis*, 956 F.3d 747, 758 (5th Cir. 2020) ("Moreover, § 922(g)(8)'s prohibition is temporary, applying only for the duration of the domestic protective order (in McGinnis's case, two years)."), *abrogated by United States v. Rahimi*, 61 F.4th 443 (5th Cir. 2023); *United States v. Boyd*, 999 F.3d 171, 188 (3d Cir. 2021) ("[W]e are further reassured that the burden imposed by § 922(g)(8) is not 'severe' because the law 'applies only to a narrow class of persons, rather than to the public at large,' and only for the discrete period of the protective order." (first quoting *United States v. Reese*, 627 F.3d 792, 802 (10th Cir. 2010), *abrogated by New York State Rifle & Pistol Ass'n v. Bruen*, 597 U.S. 1 (2022); and then citing *McGinnis*, 956 F.3d at 757); *United States v. Witcher*, No. 20-CR-116, 2021 WL 5868172, at *5 (S.D.N.Y. Dec. 10, 2021) (noting simply that Brady Act's restriction on gun possession is "temporary"); *United States v. Knight*, 574 F. Supp. 2d 224, 226 (D. Me. 2008) (noting that "the prohibition lasts only as long as the underlying state court order is in effect" and concluding that "922(g)(8)'s temporary prohibition, while the state court order is outstanding, is narrowly tailored").

[14]  597 U.S. at 19.

[15]  144 S. Ct. 1889 (2024).

In *Rahimi* the Supreme Court upheld the Brady Act against a facial challenge based on the Second Amendment.[16] The decision provided some guidance on how courts must apply the historical analogy test first adopted in *Bruen*.

*Rahimi* explained that courts must examine our country's " 'historical tradition of firearm regulation' to help delineate the contours of the right" to bear arms.[17] The "appropriate analysis involves considering whether the challenged regulation is consistent with the principles that underpin our regulatory tradition."[18] "A court must ascertain whether the new law is 'relevantly similar' to laws that our tradition is understood to permit . . . ."[19] "Why and how the regulation burdens the right are central to this inquiry."[20] Crucially, the Court explained that "[t]he law must comport with the principles underlying the Second Amendment, but it need not be a 'dead ringer' or a 'historical twin.' "[21]

Applying these principles, the Court analogized the justification and burden of § 922(g)(8) to historical surety laws and going-armed laws. Under surety laws a person having "reasonable cause to fear" harm by another could petition a magistrate to require the respondent to post bond before carrying a weapon.[22] Surety

---

[16]     *Id.* at 1898.

[17]     *Id.* at 1897 (quoting *Bruen*, 597 U.S. at 17).

[18]     *Id.* at 1898 (citing *Bruen*, 597 U.S. at 26-31).

[19]     *Id.* (quoting *Bruen*, 597 U.S. at 29).

[20]     *Id.*; *see also Bruen*, 597 U.S. at 29 ("[W]hether modern and historical regulations impose a comparable burden on the right of armed self-defense and whether that burden is comparably justified are '*central*' considerations when engaging in an analogical inquiry." (emphasis in original) (quoting *McDonald v. City of Chicago*, 561 U.S. 742, 767 (2010))); *District of Columbia v. Heller*, 554 U.S. 570, 599 (2008).

[21]     *Rahimi*, 144 S. Ct. at 1898 (quoting *Bruen*, 597 U.S. at 30); *see also Bruen*, 597 U.S. at 21 ("[A]nalogical reasoning under the Second Amendment is neither a regulatory straightjacket nor a regulatory blank check.").

[22]     *Rahimi*, 144 S. Ct. at 1900; *see also Bruen*, 597 U.S. at 55-59.

laws "could be invoked to prevent all forms of violence, including spousal abuse."[23] Going-armed laws (also called "affray" laws) criminalized the act of "riding or going armed, with dangerous or unusual weapons, [to] terrify[] the good people of the land."[24] Violators could be punished with "forfeiture of the arms . . . and imprisonment."[25] From these historical laws the Court derived the principle that "[w]hen an individual poses a clear threat of physical violence to another, the threatening individual may be disarmed."[26]

The Court held that § 922(g)(8) is "relevantly similar to those founding era regimes in both why and how it burdens the Second Amendment right."[27] The Court explained that § 922(g)(8) "restricts gun use to mitigate demonstrated threats of physical violence, just as the surety and going armed laws do."[28] As for the "how," "[t]he burden Section 922(g)(8) imposes on the right to bear arms also fits within our regulatory tradition."[29] The Court reasoned that: (1) as with surety laws, the respondent is disarmed only after a judicial determination that "the defendant 'represents a credible threat to the physical safety' of another";[30] (2) "like surety bonds of limited duration, Section 922(g)(8)'s restriction was temporary as applied to Rahimi";[31] and (3) because

---

[23] *Rahimi*, 144 S. Ct. at 1900.

[24] *Id.* at 1901 (alterations in original) (quoting 4 WILLIAM BLACKSTONE, COMMENTARIES *149).

[25] *Id.*

[26] *Id.*

[27] *Id.* (internal quotation marks omitted) (recognizing that "922(g)(8) is by no means identical to these founding era regimes, but it does not need to be").

[28] *Id.*

[29] *Id.*

[30] *Id.* at 1901-02 (quoting 18 U.S.C. § 922(g)(8)(C)(i)).

[31] *Id.* at 1902.

"going armed laws provided for imprisonment," "the lesser restriction of temporary disarmament that Section 922(g)(8) imposes is also permissible."[32]

Although *Rahimi* does not squarely address Eng's challenge to the Brady Act, it points the way. *Rahimi* involved a facial challenge to § 922(g)(8). Eng's lawsuit presents a narrower as-applied challenge based on the theory that disarmament under the Brady Act pursuant to a state protective order of indefinite duration, in contrast to an order of fixed duration, violates the Second Amendment. When the Brady Act is applied to require disarmament in these circumstances, it is still "relevantly similar" to the historical regulatory tradition described in *Rahimi*.

First, the reason for disarmament in this scenario — when the respondent is subject to a state DVPO of indefinite duration — remains similar to the reason underlying the surety and going-armed laws. "When an individual poses a clear threat of physical violence to another, the threatening individual may be disarmed."[33] It is true that, under Alaska law, most of a DVPO's prohibitions expire after one year, leaving only the general prohibition against threatening or committing acts of domestic violence.[34] But it remains the case that Eng was found by a court to present a credible threat to his ex-wife. And it seems evident, from the legislature's decision to extend the prohibition on threatening or committing additional acts of domestic violence until

---

[32] *Id.*

[33] *Id.* at 1901.

[34] AS 18.66.100(c)(1) (general prohibition); AS 18.66.100(b) (providing that provisions of protective orders under AS 18.66.100(c)(1) "are effective until further order of the court" but more specific previsions "are effective for one year unless earlier dissolved by court order"); *see* AS 18.66.990(3) (domestic violence); AS 11.41.260-.270 (stalking); AS 11.61.118-.120 (harassment).

further court order, that the legislature thought this continuing protection necessary to protect the petitioner — at least until a court expressly determines otherwise.[35]

Second, when § 922(g)(8) is applied to disarm individuals subject to a state DVPO of indefinite duration, its operation remains sufficiently similar to the historical laws described in *Rahimi*. The same procedural protections for respondents discussed in *Rahimi* apply, like notice and an opportunity to be heard. When a respondent is subject to a protective order of indefinite duration, disarmament is still temporary, not permanent.[36] The only difference is in precisely when and how the protective order is terminated. A protective order that expires after a fixed term favors the respondent by placing the onus on the petitioner to show continued protection is needed. In fact, a fixed term of protection is inherently arbitrary; it is not based on an individualized finding about how long protection should last. By contrast, a protective order that expires upon further order of the court favors the petitioner by placing the

---

[35] The legislature intended the prohibition against firearm possession to last only a year, like most of the protective order's provisions. AS 18.66.100(c)(6) (specifying DVPO may prohibit possessing a deadly weapon); AS 18.66.100(b)(2) (providing that such a prohibition expires in one year). But because the legislature chose to keep the protective order's prohibition against threatening or committing additional acts of domestic violence in effect until further order of the court, the consequence of the legislature's policy choice is to make it illegal under federal law for the respondent to possess a firearm. This result seems counterintuitive, but it is not absurd. The legislature decided that some level of continuing protection is needed even after most of the protective order's provisions expire. And Congress decided that, when a person remains subject to a qualifying protective order, that person should be disarmed. 18 U.S.C. § 922(g)(8)(B) ("It shall be unlawful for any person who is subject to a court order that restrains such person from harassing, stalking, or threatening an intimate partner . . . to . . . possess in or affecting commerce, any firearm or ammunition."). In short, Congress chose to restrict firearms possession more tightly than Alaska's legislature, and that is Congress's prerogative.

[36] *See Rahimi*, 144 S. Ct. at 1902 ("Section 922(g)(8) only prohibits firearm possession so long as the defendant 'is' subject to a restraining order.").

onus on the respondent to show further protection is unnecessary.[37] This procedural difference reflects a policy judgment about how to balance the need for protection against the rights of the respondent. But in light of *Rahimi*'s analysis, and its emphasis that modern law need not be a "dead ringer" for historical antecedents,[38] allowing disarmament based on a protective order of indefinite duration (in contrast to an order of fixed duration) is sufficiently consistent with historical tradition that it is permitted by the Second Amendment.

Although Eng emphasizes the length of time he has been subject to the DVPO, which was issued over a decade ago, he has not petitioned the court to dissolve the remaining DVPO provision. Had he done so, the superior court might have agreed that the DVPO should be dissolved, leaving him free to purchase a firearm. I agree with the court that Eng's challenge to the adequacy of the process for dissolving a DVPO under AS 18.66.100(c) is not ripe because he has not yet tried to use it.

Because I believe the Second Amendment does not prohibit application of the Brady Act to a DVPO of indefinite duration like the one to which Eng is subject, I concur in the court's decision to affirm the judgment of the superior court.

---

[37] Some of the surety laws the Supreme Court discussed in *Bruen* had this sort of burden-shifting approach. "[T]he surety statutes *presumed* that individuals had a right to public carry that could be burdened only if another could make out a specific showing of 'reasonable cause to fear an injury, or breach of the peace.'" *N.Y. State Rifle & Pistol Ass'n v. Bruen*, 597 U.S. 1, 56 (2022) (emphasis in original) (quoting Mass. Rev. Stat., ch. 134, § 16 (1836)). But once the petitioner made that showing, the burden shifted onto the respondent to prove that "*he* needed self-defense" and therefore should not have to post a bond. *Id.* at 57 (emphasis in original) (quoting *Wrenn v. District of Columbia*, 864 F.3d 650, 661 (D.C. Cir. 2017)).

[38] *Rahimi*, 144 S. Ct. at 1898 (quoting *Bruen*, 597 U.S. at 30).